88 N.J. Super. 84 (1965)
210 A.2d 791
ANDREW F. BATISTICH, PLAINTIFF-RESPONDENT,
v.
MARTIN BRENNAN, CLERK OF THE CITY OF HOBOKEN, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 24, 1965.
Decided May 28, 1965.
*85 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. Andrew F. Batistich appeared pro se.
Mr. John J. Sheehy argued the cause for defendants Louis DePascale, Thomas A. Gallo, Raymond G. Clyons and Bernard J. Scrivani.
Mr. Joseph A. Davis argued the cause for defendants Edward J. Borrone, Stephen E. Mongiello, George H. Barile and John F. O'Leary (Mr. Thomas P. Calligy, attorney).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
Since this case involves an election to be held June 15, we announced our decision from the bench after oral argument. The purpose of this opinion is to record the reasons for our affirming the judgment of the trial court.
L. 1956, c. 24 (N.J.S.A. 40:69A-161.1), attempted to except from the majority vote and run-off provisions of the Faulkner Act (L. 1950, c. 210, § 17-11 and § 17-12, N.J.S.A. 40:69A-160, 40:69A-161) those municipalities which had adopted the "Mayor-Council Plan A" (N.J.S.A. 40:69A-31 to 48) or "Mayor-Council Plan D" (N.J.S.A. 40:69A-61 to 67) of the act. Judge Artaserse held said L. 1956, c. 24 unconstitutional.
In his oral opinion Judge Artaserse set forth the facts involved in this case, as follows:
"The plaintiff, Andrew F. Batistich, is a citizen, taxpayer and resident of the City of Hoboken. He is also a candidate for election as a councilman-at-large for the City of Hoboken, in the regular municipal election to be held on May 11, 1965, at which election a mayor and three councilmen-at-large are to be elected by the voters of that city, pursuant to Mayor-Council Plan `D,' N.J.S.A. 40:69A-61 to 67, which is Article 6 of the Optional Municipal Charters Law, *86 N.J.S.A. 40:69A-1 et seq., commonly known as the Faulkner Act. Hoboken has been a Faulkner Act municipality since 1953.
The Optional Municipal Charters Law as enacted provides for 15 plans of local government. Under five of the plans, the candidacy is on a partisan basis. See Article 7, 8, 12A, 15 and 16. In these, it is quite obvious why a run-off election is not required. The candidates are elected at the general election in November after a primary election contest, if any.
The other ten plans are on a nonpartisan basis. Except for Article 13, Small Municipality Plan A, N.J.S.A. 40:69A-115 to 132 inclusive and Article 14, Small Municipality Plan B, N.J.S.A. 40:69A-133 to 138 inclusive, both applicable to municipalities having a population of less than 12,000, the remaining eight plans originally called for run-off elections. * * *
In 1956, section 40:69A-160 was amended to eliminate the run-off requirement from Mayor-Council Plan A, Article 3, N.J.S.A. 40:69A-31 to 48 and Mayor-Council Plan D, N.J.S.A. 40:69A-61 to 67 inclusive. The amendment also provided that the candidates receiving the greatest number of votes cast shall be elected to the respective offices. As it has been stated above, Hoboken operates under Mayor-Council Plan D, N.J.S.A. 40:69A-61 to 67 inclusive."
He held that there was no rational basis on which to distinguish Plan A (Vineland) and D (Hoboken) municipalities "from the municipalities which adopted or adopt any of the other six plans which require run-off elections and, therefore, under the rationale of Gangemi [Gangemi v. Rosengard, 44 N.J. 166 (1965)] the amendment of 1956 is illegal and unconstitutional  there being no rational relation between the class created and the object of the law." We agree.
Appellants concede that there is no substantial difference in government, population or otherwise between Plan A and Plan D municipalities and the other six in which run-offs are required which justifies the challenged statute. N.J.S.A. 40:69A-24 provides that "For the purposes of this act each of the optional forms of government * * * is hereby declared to be a complete and separate form of government * * *," but N.J.S.A. 40:69A-26 provides that each Faulkner Act municipality "shall * * * be governed by the plan adopted, by the provisions of this act common to optional plans and by all applicable provisions of general law * * *." (Emphasis ours) The "provisions of this act common to optional *87 plans" were assembled under that heading under Article 17 of the Faulkner Act, N.J.S.A. 40:69A-150 et seq. The majority vote and run-off provisions, sections 69A-160 and 161, are under Article 17. Sections 69A-163 to 69A-167, also under Article 17, relate to the conduct of officers and employees. They forbid "Interest in contracts or jobs," the acceptance of "Franks, free passes, tickets or services," the giving of "Promise of office, position, employment or benefits," and provide for the forfeiture of the office of any person convicted of the foregoing or of any offense involving moral turpitude or who willfully refuses or fails to appear and testify or to "answer any question regarding the property, government or affairs of the municipality, or regarding his nomination, election, appointment or official conduct on the ground that his answer would tend to incriminate him," or refuses "to waive immunity from prosecution on account of any such matter * * *." A statute exempting employees of Plan A and Plan D municipalities from these sections would be special legislation forbidden by Article 4, § VII, par. 9(13) of the Constitution of 1947. The same reasoning applies to the sections here involved.
Affirmed.