ANDREW F. BATISTICH, PLAINTIFF-RESPONDENT, v. MAR-
TIN BRENNAN, CLERK OF THE CITY OF HOBOKEN,
*ET AL.*, DEFENDANTS, AND LOUIS DePASCALE, *ET AL.*,
DEFENDANTS-APPELLANTS, AND EDWARD J. BOR-
RONE, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued September 30, 1965—Decided October 4, 1965.

*Mr. Isadore Glauberman* argued the cause for the appellants (*Mr. John J. Sheehy,* attorney).

*Mr. Joseph A. Davis* argued the cause for the respondent.

*Mr. Alan B. Handler* argued the cause *amicus curiae.*

PER CURIAM. The trial court held that *L.* 1956, *c.* 24 (*N. J. S. A.* 40:69A–161.1) was invalid because it was not enacted in accordance with the constitutional command relating to the enactment of a special or local law regulating the internal affairs of municipalities. *Art.* IV, *sec.* VII, *pars.* 7, 8, 9 and 10. The Appellate Division agreed, 88 *N. J. Super.* 84 (1965), and the appeal from its judgment comes to us as of right. *R. R.* 1:2–1(a).

The Optional Municipal Charter Law (popularly known as the Faulkner Act) comprehensively provides 15 plans of local government and leaves the adoption of any of them to local option. Under five of these plans elections are on a partisan basis, candidates for the final election being selected at a primary, while in the remaining ten plans the elections are nonpartisan. As to nonpartisan elections there is no primary but instead the statute calls for run-off elections if the majority vote described in *N. J. S. A.* 40:69A–160 and 161 is not obtained in the municipal election. The only nonpartisan plans excepted from the run-off provision were Small Munici-

pal Plan A, *N. J. S. A.* 40:69A–115–132, and Small Municipal Plan B, *N. J. S. A.* 40:69A–133–138. The reason for their exclusion is evident enough.

The statute here involved purported to amend the run-off provision to exclude therefrom two of the remaining nonpartisan plans. At the time of its adoption only Hoboken was governed by one of the two plans and only Vineland was governed by the other plan. Thus the immediate impact of the statute, if accorded retroactive application, was to amend the plans operative in those two municipalities alone.

As the Appellate Division noted, no one is able to discern a relevant difference between the nonpartisan plans thus excluded from the run-off provision and the nonpartisan plans which would remain within it. Before us appellants made the same concession but maintained that nonetheless the statute is a general law. Stressing the continuing power in the Legislature to alter or abolish existing plans of government, the appellants suggest the statute should be deemed to do no more than to create two additional optional plans of government under which the voters of a municipality could choose a nonpartisan plan without the burden of a run-off election. If the statute operated prospectively only, the power of the Legislature to offer that further choice by a statute adopted as a general law could not be denied. Indeed the statute here in question must be accorded that future operative effect. But when it is sought to read the statute to convert the plans theretofore adopted by two municipalities into the new plan innovated, as appellants suggest, by the statute in question, then the issue is whether a statute effecting such alteration of those plans can be anything but special or local when other nonpartisan plans, concededly indistinguishable in this regard, are spared the same alteration. In other words, the power of the Legislature to abolish the run-off election under the Faulkner Act must be exercised by a law which is general in character. Whether a law is general or special must be judged in the context in which it operates. Here the amendatory statute, insofar as retroactive application goes,

would affect only the nonpartisan plans of some municipalities while leaving undisturbed indistinguishable nonpartisan Faulkner Act plans in other municipalities. It is this operative impact which gives the statute a special or local character and brings the measure within the provisions of the Constitution specifying the manner and mode in which the Legislature must proceed if it wishes to exercise its power to legislate with such special or local effect.

Judgment is affirmed. No costs.

HANEMAN, J. (concurring). *L.* 1956, *c.* 24 changed the election procedure in two of the 15 plans of municipal government provided by the Faulkner Act, *N. J. S. A.* 40:69A–1 *et seq.* The question with which we are concerned is whether the change provided by the statute is constitutional under *Art.* IV, *sec.* VII, *pars.* 7, 8, 9 and 10 of the New Jersey Constitution.

The Faulkner Act plans are applicable to all municipalities of the State by their individual selection at a referendum, subject only to the population requirement found in some of the plans. In *Bucino v. Malone,* 12 *N. J.* 330 (1953), this Court said, concerning the constitutionality of the act generally, at *p.* 342 :

"The optional plans under the Faulkner Act are available to all municipalities in general. The fact that the voters of all municipalities do not adopt the same plan does not mean that a special or local law has been enacted in each case. The Legislature has enacted a general law. The action taken by the people under it through their votes and their charter commissions in no way affects the general character of the law."

The mechanics of electing governing officials are set forth as a salient component of each plan. There are three distinct methods thus provided. The statute in this manner creates three separate categories or classes into one of which each plan automatically falls. The optional selection of a particular election procedure is available to all of the municipalities of the State as an integral part of each plan.

In one group of five plans the officials are selected by a plurality vote of the electorate at the general election in November. In the second group of two the officials are selected by a plurality vote of the electorate at a regular municipal election held in May. In the third group of eight with which we are here concerned, the officials are selected by a majority vote of the electorate at a regular municipal election held in May and failing to obtain such a majority in that election at a subsequent run-off election.

The statute, insofar as creating these distinct classes of election procedure is concerned, is a general law, conferring as it does the same benefit of future selection by referendum on all of the municipalities of this State. *Bucino v. Malone, supra.* See also *State ex rel. Van Riper v. Parsons,* 40 *N. J. L.* 123 (*Sup. Ct.* 1878).

However, once a municipality has selected a specific plan of government and therefore a category of election mode into which it shall fall, it is beyond the power of the Legislature to single out and remove it from that classification. The membership in the class has then crystallized and any change in the general benefits enjoyed or detriment suffered must continue to be enjoyed or suffered by all or none of the members of the class. Only where there exists a substantial difference between one municipality and the others of the class, making it inappropriate and undesirable for continuance of the one therein and yet leaving it appropriate and desirable for the balance to remain may a municipality thus be singled out.

In *Hammer v. State, ex rel. Richards,* 44 *N. J. L.* 667 (*E. & A.* 1882), the court said, at *p.* 669:

"Normally, there can be, under our constitution, no such thing as local or special legislation to regulate the internal affairs of municipalities; but all legislation to that end must be general and applicable alike to all. Nor can any departure from the rule be justified, except where, by reason of the existence of a substantial difference between municipalities, a general law would be inappropriate to some, while it would be appropriate to and desirable for others. There it would be warranted, not only by the necessities of the situation, but by a reasonable construction of the constitutional provision. In such a case

the municipalities in which the peculiarity exists, would constitute a class, and the legislation would in fact be general, because it would apply to all to which it would be appropriate. But distinctions which do not arise from substantial differences—differences so marked as to call for separate legislation—constitute no ground for supporting such legislation."

See also *In re Petition of Cleveland, Mayor,* 52 *N. J. L.* 188 (*E. & A.* 1889).

It is conceded that there is no substantial difference between the various plans constituting the election class of the third group which would make the run-off provision especially inappropriate to the two plans removed. There is no demonstrable reason why one method of selecting the governing body is appropriate to and desirable for the remaining six forms of government and inappropriate and undesirable for the two excluded. *L.* 1956, *c.* 24 is therefore special and unconstitutional in its retroactive effect.

On the other hand, the statute is general in its prospective effect. Opportunity is accorded all the municipalities of the State to select by referendum either of these two revised plans or any other plan provided in the statute. Under the reasoning of *Bucino, supra,* the future impact of the statute is general in nature since it makes the selectivity of either plan available to all municipalities and is, in that regard, constitutional.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For reversal*—None.