ESTATE OF THOMAS BOYLE, PETITIONER–APPELLANT, v. BOARD OF TRUSTEES, STATE OF NEW JERSEY, DEPART-MENT OF THE TREASURY, DIVISION OF PENSIONS, PUBLIC EMPLOYEES' RETIREMENT SYSTEM, RESPONDENT–RE-SPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted April 11, 1989—Decided June 23, 1989.

---

[4]This is not to say, however, that a defendant who is under a specific court direction other than one entered as a probation condition cannot be indicted under *N.J.S.A.* 2C:29–9a. The same may be true if a third party also "hinders, obstructs or impedes" the probation order or any other order of a court. *N.J.S.A.* 2C:29–9a. Furthermore, if the original court order which resulted in the first contempt convictions (prior to the probation) remains in effect, defendant might again be subject to a charge of being in contempt of that order as a result of his later conduct. That matter is not before us, however. Our ruling today is limited solely to the effect of a violation of a condition of probation.

Before Judges O'BRIEN, SCALERA and STERN.

*Gerald T. Glennon,* attorney for appellant.

*Peter N. Perretti, Jr.,* Attorney General of New Jersey, attorney for respondent (*James J. Ciancia,* Assistant Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

O'BRIEN, J.A.D.

This appeal is from a determination by the Board of Trustees, State of New Jersey, Department of the Treasury, Division of Pensions, Public Employees' Retirement System (PERS or respondent) not to honor a change of beneficiary form signed by Thomas Boyle (decedent), and mailed by his attorney to PERS before his death, but received and filed subsequent to his death. We reverse.

Decedent was a member of PERS by virtue of his employment with the New Jersey Highway Authority. At the time of his divorce from Barbara Boyle, he agreed to designate three of his unemancipated children as beneficiaries under his life insurance policy to the extent of $7,000 each. The designation as to each was revocable upon emancipation. Pursuant to that agreement, decedent executed a designation of beneficiary form naming the three unemancipated children as beneficiaries for the life insurance policy afforded him through his employment. The form designated his three unemancipated children, each to the extent of $7,000, and his friend, Rose Marie Capaldo,[1] as beneficiary of the balance. This form was sent to respondent by decedent's attorney by letter dated April 22, 1980, but was not stamped as received by respondent until May 13, 1980. The endorsement reflecting this designation of beneficiary was not made by Prudential Insurance Company until December 22, 1980.

On April 19, 1987, the last of the three designated children became 18 years of age, but the youngest child did not complete high school until July 30, 1987. On August 4, 1987, decedent executed a new designation of beneficiary form to name his second wife, Rose Marie Boyle, as primary beneficiary of his group life insurance and to name, as contingent beneficiaries, the six children born of his prior marriage to Barbara Boyle and the two children born of his second wife's prior marriage. By letter of August 7, 1987, decedent's attorney forwarded the new designation of beneficiary form to respondent.[2]

Decedent died on August 12, 1987. On August 18, his surviving spouse, Rose Marie Boyle, nee Capaldo, filed a claim for benefits pursuant to the designation of beneficiary form executed by her deceased husband on August 4, 1987. The

---

[1] Decedent married Rose Marie Capaldo on February 5, 1983.

[2] Both designation of beneficiary forms were forwarded to respondent by decedent through the same attorney who also represents appellant.

Board of Trustees of respondent, at its meeting of October 21, 1987, decided it could not accept as valid the form executed by decedent on August 4, 1987, since it was not received by the Division of Pensions until August 17, 1987, five days after his death. Pursuant to the appeal of Rose Marie Boyle, the matter was referred to the Office of Administrative Law for a hearing.

After a prehearing conference by telephone on February 5, 1988, it was concluded that a plenary hearing was unnecessary and a stipulation of facts was prepared and filed. In his initial decision, the administrative law judge (ALJ) concluded that the designation of beneficiary form executed by decedent before his death, but not received and filed until after his death was legally insufficient to change the beneficiaries previously designated by him. Respondent accepted the decision of the ALJ on June 17, 1988 and denied payment of the death benefits in accordance with the August 4, 1987 designation of beneficiaries. Decedent's estate and Rose Marie Boyle, as executrix, appeal.[3]

In reaching his determination, the ALJ construed the language of two statutes, *N.J.S.A.* 43:15A–57j, which reads in pertinent part:

> A member who has elected to purchase the additional death benefit coverage provided by this section may file with the board of trustees, and alter from time to time during his lifetime, as desired, a duly attested, written, new nomination of the payee of the death benefit provided under this section.[4] [Footnote supplied.]

and the provisions of *N.J.S.A.* 43:15A–57.1, which in pertinent part provide:

---

[3]Actually the correct appellant is Rose Marie Boyle individually, since it is she who became the direct beneficiary of the $21,000, previously designated to decedent's three unemancipated children, by the designation of beneficiary form in dispute.

[4]We note the similar provision contained in *N.J.S.A.* 43:15A–94 dealing with the group life insurance that respondent is authorized to purchase to provide for the benefits set forth in *N.J.S.A.* 43:15A–57.

The designation of beneficiary by a member or retirant shall be made in writing on a form satisfactory to the retirement system, and filed with the retirement system. The member or retirant may, from time to time and without the consent of his death benefit designee, change the beneficiary by filing written notice of the change with the system on a form satisfactory to it. The new nomination will be effective on the date the notice, in proper form, is received by the system, and any prior nomination shall thereupon become void.

Reading these two sections *in pari materia*, the ALJ found that the designation of beneficiary form changing decedent's beneficiaries had to be filed with and received by the Board of Trustees or the retirement system "during his lifetime." Since this did not occur, the prior designation of beneficiary remained in effect. In the course of his decision, the ALJ, referring to the delay between mailing and receipt, said, "The reason for that delay is not of record, nor is it relevant." We disagree.

We agree that the language of *N.J.S.A.* 43:15A–57.1 is unambiguous in stating that the way to change a beneficiary is by "filing written notice of the change with the system," and that the new nomination will be effective on the date the notice "is received by the system." However, this statute does not provide that the change of beneficiary form must be received by and filed with the system while the member or retirant is still alive. The ALJ and the Board of Trustees reached this conclusion by reading *N.J.S.A.* 43:15A–57(j) *in pari materia* with *N.J.S.A.* 43:15A–57.1 and thus incorporating the words "may file with the board of trustees, and alter from time to time *during his lifetime*, as desired, a duly attested, written, new nomination of the payee of the death benefit" [emphasis supplied] from *N.J.S.A.* 43:15A–57(j) into *N.J.S.A.* 43:15A–57.1.

We do not reach the same result when reading these two statutory provisions *in pari materia*. It seems clear from *N.J.S.A.* 43:15A–57.1 that the change of beneficiary will not become effective until it has been received by the system. It seems equally clear from *N.J.S.A.* 43:15A–57(j) that the member may alter his designation of beneficiary provided he does so "during his lifetime," *i.e.*, he cannot alter his beneficiary designation by will. However, the phrase "and alter from time to

time during his lifetime" is separated from the word "file" in *N.J.S.A.* 43:15A–57(j).

We recognize that an agency's interpretation of a statute is entitled to prevail so long as it is not plainly unreasonable. *Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 327 (1984). On the other hand, we are not bound by an agency's interpretation of a statute. *Mayflower Securities v. Bureau of Securities,* 64 *N.J.* 85, 93 (1973). As a general rule of statutory construction, we look first to the language of the statute. If the statute is clear and unambiguous on its face and admits of only one interpretation there is no need to delve deeper than the act's literal terms. *State v. Butler,* 89 *N.J.* 220, 226 (1982).

In this case the two statutes relied upon by the ALJ and respondent have been construed to reach a determination that the designation of beneficiary form, although signed and allegedly mailed before the member's or retirant's death, must be received and filed before the change may be effective, no matter how long it may take to be delivered or processed, and if the member or retirant should die in the interim it is void. We cannot agree that this was the Legislature's intent. For example, in this very case the original designation of beneficiary form was signed on April 17, 1980, mailed on April 22, 1980, but for some unexplained reason not received and filed by the Division of Pensions until May 13, 1980. Fortunately Mr. Boyle did not die in the interim. The intent of the member to name a particular beneficiary cannot be so easily thwarted by an inordinate delay in mail service or delivery and filing.[5]

---

[5]*See,* in a different context, the concept of filing by mail, *Loeloff v. Kelly Press Division, American Type, etc.,* 10 *N.J.Misc.* 1156 (Sup.Ct.1932), aff'd o.b. 110 *N.J.L.* 507 (E. & A.1933), where the Court concluded, interpreting language concerning the mailing and filing of reports of accidents to the Workers' Compensation Bureau, that "the legislature undoubtedly conceived that the purpose of the act would be achieved as a rule by the sending or mailing of reports for filing." 10 *N.J.Misc.* at 1158.

Although we generally agree with the conclusion of the ALJ that the equitable principle of substantial compliance [6] used in interpreting language of private insurance contracts, *see Novern v. John Hancock Mut. Life Ins. Co.*, 107 *N.J.Super.* 570, 579–580 (Law Div.1969), and cases therein cited, does not apply to this case, which is one of statutory construction, the reasoning of those cases is nevertheless extremely persuasive. As appellant argues, once decedent executed the designation of beneficiary form and his lawyer mailed it to the Division of Pensions for filing, the matter was completely out of his hands. Absent making arrangements for personal delivery, there was nothing further he could or was obliged to do to effectuate the desired change of beneficiary. Yet, if we apply the reasoning and statutory interpretation of the ALJ, adopted by respondent, any unexplained delay in receipt of the designation of beneficiary form by the Division defeats the member's intent if death occurs in the interim.

On the other hand, we agree that respondent cannot be placed in a position where funds are paid to a beneficiary in accordance with a designation of beneficiary form on file and then, after the passage of time well beyond the death of the member or retirant, be obliged to honor a new designation of beneficiary notwithstanding that it may have been executed before the death of the member or retirant. This could create the disastrous consequences envisioned by respondent. However, that is not what occurred in this case. Here the benefits had not yet been paid to anyone at the time the change of beneficiary form was received.

We conclude, therefore, that a designation of beneficiary form changing beneficiaries, which is executed by a member or retirant during his lifetime, but which is received by the retirement system or board of trustees after his death, is fully

---

[6]The rule of substantial compliance has been applied to private insurance contracts notwithstanding recognition of the vested interest of a named beneficiary which is divested by a change of beneficiary.

effective if (1) the designation of beneficiary form was mailed to the retirement system or board of trustees in a properly addressed and stamped envelope during the lifetime of the member or retirant, and (2) the form was received[7] by the board of trustees or retirement system within a reasonable time and before any benefits have been paid.

The law is settled in New Jersey that proof of mailing, correct addressing and due posting of a letter raises the presumption that it was received by the addressee. *Cwiklinski v. Burton*, 217 *N.J.Super.* 506, 509 (App.Div.1987). This presumption implies receipt of an intrastate mailing within 15 days after its posting. *See Waite v. Doe*, 204 *N.J.Super.* 632, 637 (App.Div.1985), certif. den. 102 *N.J.* 398 (1986).

The joint stipulation of facts filed with the ALJ contained the following relevant paragraphs:

17. Said change of beneficiary designation form was mailed to the Division of Pensions with an accompanying cover letter dated August 7, 1987.

18. Said change of beneficiary designation form was stamped to have been received and filed by the Division of Pensions on August 17, 1987.

19. Thomas Boyle died on August 12, 1987, after the mailing of said change of beneficiary designation form to the Division of Pensions which form was received by the Division of Pensions subsequent to Thomas Boyle's death.

Thus, respondent does not deny receipt of the new designation of beneficiary form, but simply alleges it was not received until August 17, 1987, thirteen days after it was executed, ten days after it was mailed, and five days after Mr. Boyle died, without any other explanation. Although we recognize that stipulation # 17 only says that the form was mailed with an accompanying cover letter dated August 7, 1987, we construe this to be a stipulation by respondent that the form was mailed on August 7, 1987. Since decedent did not die until August 12, 1987, five days after the designation of beneficiary form executed by him was mailed to respondent, and it was received by respondent

---

[7]Receipt is when the designation of beneficiary form is actually received by the addressee if properly addressed, not when it is stamped as received or filed after routing through the internal system of the addressee.

within a reasonable time before any benefits had been paid, those benefits are to be paid to Rosemarie Boyle pursuant to the designation of beneficiary form executed by her husband.

In the event we have misconstrued the intent of stipulation # 17 to be that the form was actually mailed to respondent on August 7, 1987, respondent and/or the original beneficiaries, Terry Boyle, Ann Boyle and Patrick Boyle,[8] may make application to the ALJ for a hearing. At such a hearing the burden shall be on appellant to establish that the form was in fact mailed to respondent before Mr. Boyle's death. Such a hearing shall be on notice to all parties, including the three previously designated beneficiaries whose interest has been divested by the new designation of beneficiary form if sought by respondent.

Reversed.

---

[8]Terry, Ann and Patrick Boyle have not been made parties to this proceeding nor have they sought to intervene, and therefore we express no opinion as to any question relating to their position or the effect of the stipulation as to them. Nevertheless, since the effect of our decision is to divest them of their prior interest as beneficiaries, the Clerk is instructed to require respondent to provide copies of this opinion to them.