**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0905-19

RICHARD RASCZYK,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted March 3, 2021 – Decided April 6, 2021

Before Judges Whipple and Firko.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. x-xxxx958.

Richard Rasczyk, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Matthew Melton, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Richard Rasczyk appeals from the September 23, 2019 final administrative determination of the Board of Trustees (Board) of the Public Employees' Retirement System (PERS) for return of the accumulated pension deductions of his now-deceased mother, Karen[1] Rasczyk, which he claims were mistakenly paid to his father, Robert Rasczyk (Mr. Rasczyk),[2] pursuant to N.J.S.A. 43:15A-41(c). We disagree and affirm.

I.

The record presents the following pertinent chronology of events. On July 1, 1997, Karen enrolled in the PERS as a result of her employment with Essex County College. At the time, she was married to Mr. Rasczyk. On June 22, 2000, Karen completed her PERS enrollment application and listed Mr. Rasczyk as her primary beneficiary for the return of accumulated deductions from her PERS account and on her group life insurance policy. Richard and Robert, her sons, were listed as contingent beneficiaries for both return of accumulated deductions and group life insurance.

---

[1] We use first names for ease of reference and intend no disrespect.

[2] We refer to Richard's father and Karen's ex-husband as Mr. Rasczyk to avoid confusion with their child Robert, who is Richard's brother.

A-0905-19

When Karen and Mr. Rasczyk divorced in 2004, her attorney submitted a Qualified Domestic Relations Order (QDRO) to the Division of Pensions and Benefits (the Division), which provided that in the event she became eligible to receive pension benefits during her lifetime, a percentage of her allowance—the coverture fracture—would be paid to Mr. Rasczyk. Regrettably, Karen passed away on September 21, 2008, and was working for Essex County College until her death. Mr. Rasczyk retired in 2013 from working at East Side High School in Newark. The return of Karen's accumulated pension deductions was paid to Mr. Rasczyk, the original designee on her PERS enrollment beneficiary form. Richard and Robert received the life insurance benefit of $79,115.94 as contingent beneficiaries. N.J.S.A. 3B:3-14(a) revoked Karen's previous beneficiary designation of Mr. Rasczyk as her group life insurance beneficiary by operation of law.

The Division sent Richard a summary of survivor benefits on December 18, 2018, explaining Karen's beneficiary designations relative to the group life insurance but not the return of pension contributions. Richard then notified the Division that he contested the payment of the return of contributions to Mr. Rasczyk, contending N.J.S.A. 3B:3-14(a) revoked his father as the primary beneficiary. Richard appealed the Division's decision to the Board, claiming the

3

QDRO served to give Mr. Rasczyk only the coverture portion of the pension distribution and that PERS "did not properly revoke [Mr. Rasczyk] as [p]rimary [b]eneficiary" in accordance with N.J.S.A. 3B:3-14.

On April 17, 2019, the Board determined that Karen's accumulated pension deductions were rightfully returned to Mr. Rasczyk and denied Richard's request to return the monies to him and his brother, Robert, instead of Karen's designated beneficiary. Richard sought reconsideration of the Board's determination. On August 21, 2019, the Board informed Richard there were "no material facts in dispute" and there was "no need for an administrative hearing." The Board directed the secretary and Attorney General's office to prepare findings of fact and conclusions of law, which were presented and approved at the September 18, 2019 PERS Board meeting.

On September 23, 2019, the Board issued its final administrative determination. The Board considered Richard's personal statements, written submissions, documentation, and the relevant statutes, regulations, and case law. In its detailed factual findings and conclusions supporting its decision, the Board concluded that PERS could not distribute the return of Karen's pension contributions to Richard and his brother Robert. This appeal followed.

4

II.

Richard argues the following before us:

POINT I

N.J.S.A. 3B:3-14 AUTOMATICALLY REVOKES A FORMER SPOUSE BENEFICIARY DESIGNATION SUBSEQUENT TO DIVORCE.

POINT II

FRAUD BY [MR.] RASCZYK BY FALSIFYING OBITUARY BY PAYING FOR FUNERAL AND CONTROLLING THE VERBIAGE THAT KAREN WAS SURVIVED BY CURRENT "HUSBAND ROBERT."

Our role in reviewing the decision of an administrative agency is limited. In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). We accord a strong presumption of reasonableness to an agency's exercise of its statutorily delegated responsibility, City of Newark v. Nat. Res. Council, 82 N.J. 530, 539 (1980), and defer to its fact-finding, Utley v. Bd. of Review, 194 N.J. 534, 551 (2008). We will not upset the determination of an administrative agency absent a showing that it was arbitrary, capricious, or unreasonable; that it lacked fair support in the evidence; or that it violated legislative policies. Lavezzi v. State, 219 N.J. 163, 171 (2014); Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963).

On questions of law, our review is de novo. In re N.J. Dept. of Envtl. Prot. Conditional Highlands Applicability Determination, 433 N.J. Super. 223, 235 (App. Div. 2013) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). We are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973).

N.J.S.A. 3B:3-14(a) provides in pertinent part:

> a. Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, a divorce or annulment:
>
> (1) revokes any revocable:
>
> (a) dispositions or appointment of property made by a divorced individual to his former spouse in a governing instrument and any disposition or appointment created by law of in a governing instrument to a relative of the divorced individual's former spouse;
>
> (b) provision in a governing instrument conferring a general or special power of appointment on the divorced individual's former spouse, or on a relative of the divorced individual's former spouse; and
>
> (c) nomination in a governing instrument of a divorced individual's former spouse or a relative of the divorced individual's former spouse to serve in any fiduciary or representative capacity; and

6

(2) severs the interests of the former spouses in property held by them at the time of the divorce or annulment as joint tenancies in common.

In the event of a divorce or annulment, provisions of a governing instrument are given effect as if the former spouse and relatives of the former spouse disclaimed all provisions revoked by this section or, in the case of a revoked nomination in a fiduciary or representative capacity, as if the former spouse and relatives of the former spouse died immediately before the divorce or annulment. If provisions are revoked solely by this section, they are revived by the divorced individual's remarriage to the former spouse or by the revocation, suspension or nullification of the divorce or annulment. No change of circumstances other than as described in this section and in N.J.S.[A.] 3B:7-1 effects a revocation or severance.

Moreover, pursuant to N.J.S.A. 18A:66-38, "Upon the receipt of proper proofs of the death of a member in service . . . there shall be paid to such member's beneficiary":

(1) The member's accumulated deductions at the time of death together with regular interest . . . ; and

(2) An amount equal to [one-and-one-half] times the compensation upon which contributions by the member to the annuity savings fund were based in the last year of creditable service.

[N.J.S.A. 18A:66-38.]

Based upon or review of the record, we are satisfied that the Board's decision is amply supported by substantial credible evidence in the record, and we discern no reason to disturb it. N.J.S.A. 43:15A-57.1 mandates that:

> The designation of beneficiary by a member or retirant shall be made in writing on a form satisfactory to the retirement system, and filed with the retirement system. The member or retirant may, from time to time and without the consent of his death benefit designee, change the beneficiary by filing written notice of the change with the system on a form satisfactory to it. The new nomination will be effective on the date the notice, in proper form, is received by the system, and any prior nomination shall thereupon become void.

We have held "that the language of N.J.S.A. 43:15A-57.1 is unambiguous" in requiring that changes of beneficiaries be filed in writing with the Division. Estate of Boyle v. Bd. of Trs., 234 N.J. Super. 93, 97 (App. Div. 1989). Moreover, the QDRO does not serve as a substitute to eliminate the express statutory requirements of N.J.S.A. 43:15A-57.1. Karen had the option to change her primary beneficiary designation for the return of accumulated deductions from her PERS account but chose not to. Therefore, we find Richard's argument under N.J.S.A. 3B:3-14 to be unpersuasive.

Further, a related regulation, N.J.A.C. 17:4-3.6(b), provides that "[i]f a deceased member has an eligible surviving spouse, child or parent, then the deceased member's aggregate contributions at the time of death shall be applied

8

toward the payment of the benefit established at N.J.S.A. 43:16A-9(1)." According to the regulatory history, "the purpose of N.J.A.C. 17:4-3.6 when originally proposed was to ensure that members' <u>most recent expression</u> of beneficiary designation is given effect." 32 N.J.R. 3581(a) (Oct. 2, 2000) (emphasis added).

Although Karen divorced Mr. Rasczyk in 2004, she never removed him from her beneficiary designation on file with PERS. Therefore, the Division properly paid the return of accumulated deductions to the named beneficiary—Mr. Rasczyk—on file at the time of Karen's death in accordance with N.J.S.A. 18A:66-38.[3] For whatever reason or reasons, Karen did not eliminate Mr. Rasczyk as the beneficiary of her return of accumulated deductions, and it is not up to the courts or the Board to take matters into their own hands. In sum, the

---

[3] The Division incorrectly cites N.J.S.A. 43:15A-48(c), however, the relevant statute is N.J.S.A. 18A:66-38, which states:

> (a) The member's accumulated deductions at the time of death together with regular interest . . . ; and

> (b) An amount equal to [one-and-one-half] times the compensation upon which contributions by the member to the annuity savings fund were based in the last year of creditable service.

Board's final decision was consonant with the governing law, and was neither arbitrary nor capricious.

Richard's claim of fraud raised in Point II of his brief was not presented to the Board and is deemed waived. See State v. Witt, 223 N.J. 409, 419 (2015).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION