**UNITED STATES of America**

v.

**William T. SMITH, Jr., Appellant.**

**No. 87-5756.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Dec. 17, 1987.

Decided Dec. 29, 1987.

John Rogers Carroll, Carroll & Carroll, Philadelphia, Pa., for appellant.

James J. West, U.S. Atty., Harrisburg, Pa., for appellee.

Before GIBBONS, Chief Judge, SLOVITER, and COWEN, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This is an appeal by William T. Smith, Jr., a federal prisoner, from the order of the district court denying Smith's motion for bail pending disposition of his petition for a writ of habeas corpus. We expedited the appeal and our consideration of this case, as is appropriate in all bail matters.

Smith was convicted following a jury trial of three counts of mail fraud, 18 U.S.C. § 1341, five counts of interstate transportation in aid of racketeering, 18 U.S.C. § 1952, and one count of conspiracy, 18 U.S.C. § 371. He was sentenced on July 24, 1985 to twelve consecutive years of imprisonment and fined $63,000. The component prison terms were as follows: five years on the conspiracy, to which a five-year sentence on one count of mail fraud and two five-year sentences on two counts of interstate transportation were concurrent; a consecutive sentence of five years' imprisonment on one count of mail fraud, to which five-year sentences on two counts of interstate transportation were concurrent; and a consecutive sentence of two years on the third count of mail fraud, to which a two-year sentence on one count of

interstate transportation was concurrent. In other words, each prison sentence imposed had one or more sentences of interstate transportation running concurrently. This court affirmed the conviction and the Supreme Court denied certiorari. *United States v. Smith*, 789 F.2d 196 (3d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986).

Smith's petition for a writ of habeas corpus asserts that the convictions on mail fraud and conspiracy counts were rendered invalid by the Supreme Court's decision in *McNally v. United States,* —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), because they were based on intangible rights objectives. He also alleges that the interstate transportation counts also incorporated these objectives and therefore they cannot be sustained. Smith's motion for bail pending the disposition of his habeas corpus petition was denied. The district court stated that although its charge concerning the mail fraud statute "is contrary to *McNally*," the interstate transportation counts are "separate and distinct." App. at 166, 168. Therefore, the court held that *McNally* does not present the "special reasons" warranting bail pending habeas corpus.

Smith argues that the district court abused its discretion because it failed to grasp the implications of *McNally* and improperly analyzed the relevant "special reasons" criteria governing bail pending a determination of the petition for a writ of habeas corpus. Before we can reach the merits of Smith's appeal, we must decide whether we have jurisdiction.

## I.

### *Appellate Jurisdiction Over Order re Bail Pending Habeas Corpus*

In *Stack v. Boyle*, 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 3 (1951), the Supreme Court held that a pretrial order denying a motion to reduce bail is a final order appealable under 28 U.S.C. § 1291. The Court cited *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949), which set forth the collateral order doctrine. No decision of the Supreme Court in the intervening decades has eroded the rule of *Stack v. Boyle*. In fact, recently the Court, in holding that an order disqualifying counsel in a criminal action was not a collateral order and therefore not immediately appealable, distinguished an order denying a motion to reduce bail because in such an order "[t]he issue is finally resolved and is independent of the issues to be tried, and the order becomes moot if review awaits conviction and sentence." *Flanagan v. United States,* 465 U.S. 259, 266, 104 S.Ct. 1051, 1055, 79 L.Ed.2d 288 (1984) (citing *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951)).

The Supreme Court has never considered the appealability of an order denying bail pending disposition of a habeas corpus petition. This court also has not decided that issue, although we have assumed without deciding that such an order is appealable. *See United States ex rel. Slough v. Yeager,* 449 F.2d 755, 756 (3d Cir.1971) (per curiam). The circuits are not unanimous. Most recently, the Seventh Circuit in *Cherek v. United States,* 767 F.2d 335, 337 (7th Cir.1985), concluded that such an order was appealable on the authority of *Stack v. Boyle. Accord Iuteri v. Nardoza,* 662 F.2d 159, 161 (2d Cir.1981). *Contra Woodcock v. Donnelly,* 470 F.2d 93, 94 (1st Cir.1972) (per curiam); *see Glynn v. Donnelly,* 470 F.2d 95, 96 & n. 1 (1st Cir.1972).

Arguably, the rationale applied by the Court to the appealability of bail orders pending trial, i.e., that "there is no discretion to refuse to reduce excessive bail," *Stack v. Boyle,* 342 U.S. at 6, 72 S.Ct. at 4, is distinguishable from that applicable to bail in a habeas corpus proceeding, where the district court has wide discretion to decide the bail issue. Nonetheless, we view the bail order in a habeas corpus case as a collateral order: severable from the merits, conclusively determining the disputed question, and effectively unreviewable on appeal from a final judgment. The government also has opined that appellate jurisdiction is present. *See* Appellee's Brief at 1. We assume that had bail been

granted, it would vigorously contend that we had jurisdiction over its appeal. Indeed, as the court stated in *Iuteri v. Nardoza*, 662 F.2d at 161, "[t]here are compelling reasons to entertain appeals by the Government from orders granting bail in habeas corpus proceedings where, as here, incarceration has resulted from a conviction."

We recognize that our holding that orders on motions for bail pending a federal habeas corpus determination are appealable may invite some additional appeals. Nonetheless, in light of the deference that we must give to the district courts in such cases, *see Hilton v. Braunskill*, —— U.S. ——, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987), we believe that an excessive burden is unlikely. Moreover, there are other means for dealing with frivolous appeals. We hold that we have jurisdiction to consider this appeal.

## II.

### *Criteria for Bail Pending Habeas Corpus*

In *United States v. Dansker*, 561 F.2d 485, 487 (3d Cir.1977) (per curiam), this court concluded "that the standards under Fed.R.App.P. 23 should be used when appellate review on direct appeal has been completed and the proceedings under consideration are collateral in nature." We explained that, "[r]ule 23 ... permits granting bail when 'special reasons' exist." *Id.; see* Fed.R.App.P. 23(d).

Although the issue before the Supreme Court in *Hilton v. Braunskill*, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987), was somewhat different than that presented here, in that it involved an appeal from an order releasing a state prisoner following a decision to grant the writ of habeas corpus, the Court's analysis of the standard governing review of Rule 23 determinations is equally applicable here. A "presumption of correctness" must be accorded the initial custody determination, which "may be overcome in the appellate court 'for special reasons shown.'" *Id.* 107 S.Ct. at 2118. The standards governing stays of civil judgments should guide courts in determin-

ing whether to release a habeas petitioner pending appeal; these include whether the applicant has made a "strong showing that he is likely to succeed on the merits," irreparable injury, injury to other parties interested in the proceeding, and the public interest. *Id.* at 2119. Among the other factors referred to by the Court was the government's interest in continued custody pending a final determination of the case on appeal, which the Court noted was strongest where the remaining portion of the sentence is a long one. *Id.*

In this case, appellant Smith focuses exclusively on the merits, arguing only that the *McNally* decision effectively undermines all counts of the underlying conviction. We limit ourselves to that issue.

The charges of which Smith was convicted arose out of a scheme pursuant to which Smith, the Republican Chairman of Dauphin County, and John R. Torquato, a son of a former Democratic County Chairman of Cambria County, agreed to make political contributions to Pennsylvania state officials in order to obtain lucrative contracts to recover overpaid FICA taxes for CTA, Ltd. in return for which Smith and Torquato would receive substantial fees. The details of the scheme and the evidence supporting it are set forth in our opinion affirming Smith's conviction on direct appeal. *See Smith*, 789 F.2d at 198–200. As is evident from our review there, an essential element of the scheme was to secure a contract to be awarded on a no-bid basis which "would have generated $4,000,000 in profit, to be split between Smith and Torquato, at an expense to the Commonwealth of $6,000,000," *id.* at 199, in lieu of having the contract performed in-house by state employees at a cost of $300,000. *Id.* The contract was ultimately performed by an accounting firm for $1,300,000 with a possibility of up to thirty-five percent being rebated. *Id.*

In *McNally*, the Supreme Court held that the mail fraud statute, 18 U.S.C. § 1341, is "limited in scope to the protection of property rights." 107 S.Ct. at 2881. It reversed the mail fraud conviction that had been based on a "scheme[ ] to defraud citi-

zens of their intangible rights to honest and impartial government." *Id.* at 2879. Although the district court has not yet ruled on the merits of Smith's petition, in considering the bail motion the court stated that its charge on mail fraud was invalid under *McNally,* apparently because the charge permitted the jury to find a "scheme to defraud the citizens ... of the good and faithful services of their employees and elected public officials." App. at 166.

The government argues that under the Supreme Court's subsequent decision in *Carpenter v. United States,* — U.S. —, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), in which the Court explained that *McNally* did not mean that "intangible property rights" were not protected by the mail and wire fraud statutes, Smith's mail fraud convictions need not be vacated. It also relies on the Sixth Circuit decision in *United States v. Runnels,* 833 F.2d 1183 (6th Cir. 1987), where the court upheld a mail fraud conviction notwithstanding a jury instruction on the "intangible rights" doctrine because the combination of the jury instruction and the evidence necessarily demonstrated factual findings that a bribe was paid by the attorney defendant to the union president defendant. Smith counters by relying, *inter alia,* on *United States v. Mandel,* 672 F.Supp. 864 (D.Md.1987), reversing mail fraud counts on the basis of *McNally.*

We refrain from commenting on the merits of Smith's mail fraud conviction because that was not the basis of the denial of bail and we do not believe it appropriate to preempt the district court's ultimate decision on that issue. At that time, the court will undoubtedly find guidance not from the cases in other jurisdictions relied on by the parties but from this court's most recent analysis of *McNally. See United States v. Piccolo,* 835 F.2d 517, (3d Cir. 1987).

We limit our consideration to the interstate transportation convictions. A conviction for interstate transportation requires evidence that the defendant traveled in interstate commerce or used a facility in interstate commerce with intent to promote certain defined unlawful activity, including bribery. 18 U.S.C. § 1952. In our opinion on Smith's direct appeal, we stated that "[t]he evidence shows that Torquato, alone or with Smith did meet with government officials as part of the bribery scheme after each of the trips [alleged in the indictment on which Smith was convicted]." *Smith,* 789 F.2d at 204.

Smith does not contend that the charge on the interstate transportation counts used the "intangible rights" language. The indictment alleged that bribery was the unlawful activity on which the interstate transportation counts were predicated. The jury was charged that for a violation of these counts to be proven, "it is necessary that the Government prove beyond a reasonable doubt that the travel or use of a facility of interstate commerce was done with the intention of promoting, managing, establishing, carrying on or *facilitating the offense of bribery* in violation of Pennsylvania law and thereafter an act related to an attempt to *perform bribery* was itself performed." App. at 92 (emphasis added).

Smith argues that because the interstate transportation counts were based on Torquato's use of interstate transportation, to which Smith was tied by a conspiracy as allowed by a charge pursuant to *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), the "intangible rights" objective of the conspiracy could have infected the interstate transportation convictions. Again, we do not decide the merits of Smith's subtle contention. Instead, we hold merely that his claim that the interstate transportation charges were infected by an allegedly reversible charge on mail fraud or conspiracy does not present such a "strong showing that [Smith] is likely to succeed on the merits," *see Hilton v. Braunskill,* 107 S.Ct. at 2119, as to overcome the presumption of correctness to which the district court's custody determination is entitled.

### III.

For the reasons set forth above, we will affirm the district court's order denying

Smith's motion for bail pending the determination on the petition for a writ of habeas corpus. The mandate will issue forthwith.