Vincent James LANDANO

v.

John J. RAFFERTY, Superintendent, Rahway State Prison, Irwin I. Kimmelman, Attorney General of the State of New Jersey.

State of New Jersey, John J. Rafferty, Superintendent, East New Jersey State Prison, Robert Del Tufo, Attorney General of State of New Jersey, Appellants.

Vincent James LANDANO

v.

John J. RAFFERTY, Superintendent, East Jersey State Prison, Peter Perretti, Attorney General, State of New Jersey, Leslie Fay Schwartz, Deputy Attorney General,

The Office of the Hudson County Prosecutor; Kearny Police Department, Newark Police Department, Jersey City Police Department, and Perth Amboy Police Department,

State of New Jersey, John J. Rafferty, Superintendent East New Jersey State Prison, Robert Del Tufo, Attorney General of State of New Jersey, Appellants.

John J. RAFFERTY, Superintendent, East New Jersey State Prison, and Robert Del Tufo, Attorney General of the State of New Jersey, Appellants,

v.

Vincent James LANDANO.

Nos. 91–5336, 91–5337 and 92–5357.

United States Court of Appeals, Third Circuit.

Argued Dec. 12, 1991.

Decided July 16, 1992.

Rehearing and Rehearing In Banc Denied Aug. 11, 1992.

* As to panel rehearing.

Susan B. Gyss (argued), Jeffrey Ziegelheim, Asst. Prosecutors, Paul M. De Pascale, Prosecutor of Hudson County, Office of Hudson County Prosecutor, Jersey City, N.J., for appellants.

Neil M. Mullin (argued), Smith, Mullin & Kiernan, P.C., West Orange, N.J., for appellee.

Before: SLOVITER, Chief Judge, SCIRICA and ROTH, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

This is the fourth time that this court has before it an aspect of the efforts by plaintiff-petitioner Vincent James Landano seeking a writ of habeas corpus awarding a new trial. Landano was convicted in 1977 in New Jersey state court on a charge of felony murder of a police officer during the course of the robbery of a check-cashing establishment in New Jersey. In previous appeals to this court, we affirmed the district court's denial of a writ of habeas corpus, *Landano v. Rafferty,* 856 F.2d 569 (3d Cir.1988), *cert. denied,* 489 U.S. 1014, 109 S.Ct. 1127, 103 L.Ed.2d 189 (1989); reversed the district court's subsequent grant of a conditional writ of habeas corpus because we concluded Landano had failed to exhaust state remedies, *Landano v. Rafferty,* 897 F.2d 661 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 46, 112 L.Ed.2d 23 (1990); and, most recently, in related litigation, affirmed in part and reversed in part the district court's order granting Landano's request for certain information under the Freedom of Information Act in which Landano seeks to uncover potentially exculpatory material. *See Landano v. United States Dep't. of Justice,* 956 F.2d 422 (3d Cir.1992).[1]

The present appeals are by defendants John J. Rafferty, Superintendent of East New Jersey State Prison, and Robert Del Tufo, Attorney General of the State of

---

1. We also note that in *Landano v. Rafferty,* 859 F.2d 301 (3d Cir.1988) (per curiam), we dismissed for lack of jurisdiction Landano's appeal on behalf of counsel from the district court's refusal to appoint Landano's counsel retroactively and denying counsel's request for waiver of the maximum allowable fee pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A(b) and (d)(3) (1982 & Supp. IV 1986).

New Jersey, (collectively referred to as "the State") from two orders granting bail to Landano. The first order granting bail to Landano pending review of his petition for habeas corpus was entered by the district court on May 3, 1991. We heard argument on these appeals on December 12, 1991.

On February 4, 1992, while the appeal was *sub judice*, the district court ruled on matters previously pending before it, and issued an order denying the State's motion to dismiss Landano's petition for failure to exhaust, staying the petition for habeas corpus pending exhaustion in the state courts, and, as most relevant here, continuing Landano's enlargement on federal bail pending exhaustion of state remedies. *Landano v. Rafferty*, 782 F.Supp. 986 (D.N.J.1992). The State sought to appeal this order by filing a petition for permission to appeal. We hold that there was insufficient legal basis for the district court's bail orders, and reverse.

## I.

### FACTS

This case has a long and complicated procedural history which is set forth in detail in this court's prior opinions, as well as in district court opinions [2] which in turn relied on state court opinions. We will recount the facts only insofar as they are relevant to the issues before us.

On August 13, 1976, in the course of a robbery of the Hi–Way Check Cashing Service in Kearny, New Jersey, by two gunmen, one gunman killed Newark Police Officer John Snow. A Hudson County grand jury indicted Landano along with Allen Roller, Victor Forni, and Bruce Reen, for felony murder, armed robbery, and other offenses related to the incident. The day before the scheduled trial of Roller and Landano, Roller pled *non vult* to the felony murder charge and entered into a plea agreement with the Hudson County Prose-

cutor to testify against Landano at trial. Roller's testimony was highly damaging to Landano.

Roller testified at trial that the robbery was masterminded by a motorcycle gang known as "The Breed," which frequently organized robberies in the area around Staten Island, New York, and that Landano, although not a Breed member or affiliate, was recruited specifically for the Kearny robbery at Forni's suggestion. Roller stated that when he and Landano arrived at the Hi–Way Check Cashing Service trailer early in the morning of August 13, 1976, Roller went to the window of the trailer and forced his way inside while Landano waited outside. Meanwhile, Officer Snow arrived in a patrol car at the Hi–Way parking lot carrying an attache case containing $46,000 in cash which was to be delivered to the check-cashing establishment. Roller testified that after he took the cash drawer of the check-cashing establishment at gunpoint, he saw Landano running from a police car carrying an attache case. When he and Landano got in the car after the event, Landano stated that he had to "ice [or waste] the cop." *Landano*, 670 F.Supp. at 574.

Joseph Pascuitti, an employee of an adjacent warehouse, testified that he saw a dark-haired man approach Officer Snow's patrol car, that a moment later he heard gunshots, and that when he turned back, he saw a green Chevrolet pull away with the same dark-haired man driving. Pascuitti described the dark-haired man as having curly hair; he was not able to identify Landano as that man.

The attempt of the perpetrators to maneuver away from the crime scene in snarled traffic caught the attention of Raymond Portas, a truck driver stopped at an intersection. He testified that Landano was driving the car, but he was unable to identify Roller. This was the bulk of the evidence presented at Landano's trial link-

---

**2.** *See Landano v. Rafferty*, 670 F.Supp. 570 (D.N.J.1987), *aff'd*, 856 F.2d 569 (3d Cir.1988), *cert. denied*, 489 U.S. 1014, 109 S.Ct. 1127, 103 L.Ed.2d 189 (1989), and *Landano v. Rafferty*,

126 F.R.D. 627 (D.N.J.1989), *rev'd*, 897 F.2d 661 (3d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 46, 112 L.Ed.2d 23 (1990).

ing him to the murder of Officer Snow. *Id.* at 574–75.

In May 1977, Landano was found guilty on all counts and was sentenced to life imprisonment and a consecutive seven to fifteen year term for the other offenses.[3] In June 1977, Landano filed a notice of appeal. In October 1978, Landano obtained an order remanding the case to the trial court for consideration of a motion for a new trial on the basis of newly discovered evidence. Judge Maurice A. Walsh Jr., J.S.C., found, after a hearing, that the knowledge of evidence of prior robberies carried out by Roller and Forni could be imputed to the prosecutor, that it had been suppressed, and that had it been revealed at trial it " 'would have been probative in demonstrating, if Roller denied Forni's participation [in those robberies], that Roller was protecting Forni.' " *Id.* at 585 (quoting Opinion of Judge Walsh, December 1, 1978, Appendix Vol. I, at 36A). Nevertheless, the court concluded that the evidence, although "exculpatory," was not "material" within the meaning of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),[4] because the outcome of the trial would not have been different had it been revealed. The trial court thus denied the motion for a new trial. The Superior Court of New Jersey, Appellate Division, both affirmed that denial and denied Landano's direct appeal, and the New Jersey Supreme Court denied certification in July 1980.

Landano subsequently filed for post-conviction relief in state court in March 1982, based on, *inter alia,* a recantation by Raymond Portas, the truck driver who had positively identified Landano, and another *Brady* claim. The details of Portas's recantation and the reasons therefor are fully set forth by the district court in *Landano,* 670 F.Supp. at 574–84. Hearings on these claims were conducted in June, September, October, and November of 1982 before

Judge Joseph P. Hanrahan, J.S.C. Portas testified that he had failed to identify Landano from a photo display on the day of the crime but nevertheless, on April 15, 1977, eight months later, he initialed the back of a photograph of Landano after the detective stated " '[t]hat's the man we want.' " *Id.* at 576. Portas claimed that he had picked out a different photograph (possibly of Victor Forni, *see id.* at 578–79 n. 5) which the prosecutor handed to someone who took it out of the room. Portas also stated at the post-conviction hearing that when he was in the courthouse right before trial, a detective told him that Landano had passed them in the hallway and stated " 'that's our man.' " *Id.* at 577. Portas testified that he had not recognized Landano.

The state trial court denied the relief, finding Portas's recantation untrustworthy. *See id.* at 577–78. In January 1984 the Appellate Division denied Landano's appeal of that finding and in June 1984, the New Jersey Supreme Court denied certification.

Landano filed his first petition for habeas corpus in federal district court in New Jersey in October 1985, claiming a violation of his due process right to a fair trial based on Portas's recantation and the *Brady* claims he had raised in his motion for a new trial. The district court held an evidentiary hearing on September 2, 1987, and concluded that Portas "is a credible witness and further, that his recantation testimony is believable," *id.* at 579, and that the State's explanation of the missing photographs was "implausible." *Id.* at n. 7. Nevertheless, because of the presumption of correctness for a state court's determination of a factual issue under 28 U.S.C. § 2254(d) (1982), and the inapplicability of any of the exceptions to the presumption, the court deferred to the state court's determination that Portas was not a credible witness. The court also rejected Landano's

---

**3.** Subsequently, Forni and Reen were tried together and acquitted of all charges except conspiracy to commit armed robbery. State v. Landano, No. 73–76, slip op. at 2 (N.J.Super.Ct. March 4, 1991) (letter opinion).

**4.** In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Court held that the suppression by the prosecutor of evidence material to the defendant's guilt is a violation of due process.

claim that the State suppressed exculpatory and material evidence in violation of the requirements of *Brady,* and thus denied Landano's first petition for habeas corpus on the merits.[5] This court affirmed. *See Landano v. Rafferty,* 856 F.2d 569 (3d Cir.1988), *cert. denied,* 489 U.S. 1014, 109 S.Ct. 1127, 103 L.Ed.2d 189 (1989).

In June 1989, Landano filed a motion under Fed.R.Civ.P. 60(b) to reopen the habeas proceeding because of fraud on the part of the prosecution concerning the suppression of evidence, and requested a temporary restraining order to obtain files from the New Jersey Attorney General and the Hudson County Prosecutor. The court so ordered and Landano's counsel was permitted to review certain state documents.

Thereafter, Landano presented to the federal court allegedly exculpatory evidence of a handwritten document (the "ID on Landano") from the Kearny police files suggesting that Pascuitti and another potential witness, Christopher Calabrese, had rejected a photograph of Landano after stating that the suspect's hair was more curly, and a Kearny Police Department Continuation Report submitted by a Detective Rose which summarized a meeting with someone named either Joseph Pasapas or Basapas. Pasapas/Basapas apparently picked out a photograph of Victor Forni "as resembling the man who drove the car away."

After finding that Landano had exhausted his federal claims in state court, the district court reopened the habeas proceeding, invoking the "extraordinary circumstances" standard under Fed.R.Civ.P. 60(b)(6)[6] based on Landano's allegations that the State suppressed exculpatory evidence. *Landano v. Rafferty,* 126 F.R.D. 627, 638 (D.N.J.1989). The court found that there was a violation of *Brady v. Maryland* because the evidence presented had been suppressed, was exculpatory, and was material because if the defense had known about it, it would have bolstered Landano's affirmative defense that Forni was the actual killer of Officer Snow. *Id.* at 644–54. Accordingly, the court granted a conditional writ of habeas corpus unless the state commenced a new trial within ninety days, and ordered Landano released on bail on July 28, 1989. *Id.* at 654.

The State appealed the conditional grant of the writ. In February, 1990, this court reversed the district court on the ground that Landano had not exhausted some of the claims on which the district court based its decision. *Landano,* 897 F.2d 661 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 46, 112 L.Ed.2d 23 (1990). We held that Landano must provide the state courts with the factual predicate for his legal theory as to why his constitutional rights have been violated so that the court could determine the materiality of the material suppressed. We stated that in making that determination, a court "must conduct a fact-sensitive examination of the precise nature of the suppressed information" so that it can make the "delicate judgment as to whether there is a reasonable probability that had the suppressed evidence been disclosed, the outcome of the trial would have been different." *Id.* at 670. Thereafter, the district court dismissed Landano's habeas petition.

Landano returned to state court and filed a petition for habeas corpus/post-conviction relief and bail. The bail was denied by Judge Walsh and that denial was affirmed on appeal. On November 15, 1990, however, the New Jersey Supreme Court, without an opinion, granted Landano, who was still at liberty at the time following the district court's earlier order granting Landano's writ of habeas corpus, a stay of the arrest order pending a decision on his post-conviction relief petition. The status of this stay of arrest as bail *vel non* is an

---

**5.** The court also ruled on Landano's contention that the trial court issued a coercive *Allen* charge, *see Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), finding that, in context, the instruction was not so coercive as to deprive Landano of a fair trial and the right to a unanimous jury. *Landano,* 670 F.Supp. at 590.

**6.** Fed.R.Civ.P. 60(b) provides: "the court may relieve a party ... from a final judgment ... for ... (6) any other reason justifying relief from the operation of the judgment."

issue which the parties address but which we need not decide.

On March 4, 1991, Judge Walsh denied Landano's petition under New Jersey Rule of Criminal Procedure 3:22–1 for post-conviction relief, referring, *inter alia,* to the concession of Landano's counsel that everything he was asserting in this petition had already been previously presented to the state courts. Inasmuch as Rules 3:22–4 and 3:22–5 bar relief in post-conviction proceedings on grounds that either were not raised in prior proceedings (with exceptions) or for issues already adjudicated, Judge Walsh ruled that "it is evident that petitioner continues to raise issues and arguments which have long since been ruled on and supposedly disposed of under our New Jersey Court Rules." *State v. Landano,* No. 73–76, slip op. at 23 (N.J.Super.Ct. March 4, 1991) (letter opinion). Judge Walsh also ordered the parties to appear before the New Jersey Supreme Court on or before March 13, 1991, for a determination of whether Landano should continue on bail.[7]

The State immediately filed a motion in the New Jersey Supreme Court to lift the stay of arrest, apparently submitting with that motion a sworn statement, dated February, 15, 1991, that there had been "a full hearing on the merits of defendant's Post-Conviction Relief Application ... before the honorable Maurice A. Walsh, Jr." *See* Transcript of Proceedings, Civil Nos. 85–4777 and 89–2454 at 6 (D.N.J. March 12, 1991).

Landano, rather than appeal this ruling,[8] filed a successive petition for habeas corpus on March 11, 1991, arguing that Judge Walsh's opinion and the State's statement to the New Jersey Supreme Court demonstrated that he had exhausted his claims. Hours before the scheduled hearing before the federal court on March 12, 1991, the State asked Judge Walsh for a rehearing.

At the March 12 hearing before the federal court, Landano, fearful that the New Jersey Supreme Court would act on the State's latest request and lift the stay of arrest, sought federal bail.[9] He argued that because there is no New Jersey statutory provision for allowing bail pending post-conviction proceedings, there was "an absence of an available State corrective process or existence of circumstances rendering such process [ineffective] to protect the rights of the prisoner" under 28 U.S.C. 2254(b). Transcript, March 12 at 5–6.[10]

At the close of this hearing, the federal court denied the order to show cause why the writ should not be granted, but got the parties to agree that "no application will be made to arrest Mr. Landano until this Court has the opportunity to rule upon the pending application." Transcript, March 12 at 28. A consent order to that effect was entered on April 12, 1991.

On March 22, 1991, Judge Walsh conducted a hearing on the State's petition for rehearing from the March 4th order. On April 9, 1991, he issued a letter opinion, which he characterized as an "addendum" to his March 4th opinion, denying the State's motion for a full rehearing because the first hearing was "full" enough. Thus, the denial of post-conviction relief would stand. At the same time, the judge clarified his previous opinion by saying that the

7. Although Judge Walsh referred to it as bail, Landano's freedom at that point was actually due to the New Jersey Supreme Court's stay of arrest order.

8. Landano argued that he had nothing from which to appeal in state court because he was not aggrieved by Judge Walsh's decision. As Landano's counsel stated, "I can hardly get up in front of the Appellate Division and lie and say, 'I don't think the issues were 'exhaustively tried.' '" Transcript, March 12 at 3.

9. Landano's counsel also complained about the State's inconsistent positions.

> They [the State] represented to the State Supreme Court that we had a full and fair hearing, but after learning we were coming here [to federal court], they swear in another affidavit that we will in the interest of justice require a hearing. That is playing fast and loose, so the State is estopped from claiming they didn't have a hearing.
> Transcript, March 12 at 7.

10. The State's position at this hearing was that the court did not have jurisdiction because there were still ongoing state court proceedings, based on its application for a rehearing.

denial of relief as to three issues was based on their prior adjudication and

> the remaining issues consisting of the 'Basapas/Pasapas report,' 'I.D. on Landano' document, additional evidence suppressed by the State, and destroyed evidence are all based on conjecture, failing to impress this court enough to grant an evidentiary hearing.

*Re: Vincent James Landano,* No. 73–76, slip op. at 11–12 (N.J.Super.Ct., April 9, 1991) (letter opinion). The court again ordered the parties to appear before the New Jersey Supreme Court on the question of rescission of bail no later than April 11, 1991. Subsequently, on May 1, 1991, the New Jersey Supreme Court entered an order without explanation granting the State's motion to vacate the stay of arrest, effective May 2, 1991, at 5 p.m.

Landano returned immediately to federal court and filed a motion for bail and an order to show cause why a writ of habeas corpus should not be granted. The district court held a conference call and then an emergency hearing on the morning of May 2, 1991, expressing its displeasure at the prosecutor's failure to take action to prevent Landano's arrest.[11] The court orally ordered that Landano be released on bail in the custody of his attorney and under the supervision of the United States Pretrial Services.

This order, entered May 3, 1991, was subsequently explicated in the court's Order and Opinion dated May 6, 1991. At that time the court explained that it had granted bail pending habeas review of a state conviction under the authority of *Lucas v. Hadden,* 790 F.2d 365 (3d Cir.1986), a case in which this court held that bail to a state prisoner pending federal habeas review was available in "extraordinary cir-

cumstances." The district court found that such extraordinary circumstances existed here to warrant bail.[12]

The argument before this court focused primarily on the authority of the district court to grant bail before it had determined whether the petitioner had exhausted his state remedies on the effect of the suppression of the newly discovered material relating to the "ID on Landano" and the "Pasapas/Basapas" documents.

On February 4, 1992, while the matter was pending here, the district court ruled on the still pending motion filed by the State to dismiss Landano's habeas petition for failure to exhaust state remedies as to the newly discovered material. The court found that Landano had failed to exhaust his remedies with regard to that issue, but it denied the State's motion to dismiss Landano's petition for a writ of habeas corpus, instead staying the habeas proceeding pending Landano's exhaustion of state remedies. In addition, the court ordered that Landano be continued on federal bail pursuant to its order entered May 3, 1991. Shortly thereafter, on February 14, 1992, the State filed a motion for permission to appeal from the order continuing Landano on federal bail, and this court docketed that petition as no. 92–8013.[13]

While the federal matter was proceeding as set forth, on March 12, 1992, the New Jersey Appellate Division acted on Landano's appeal from Judge Walsh's order denying an evidentiary hearing on new evidence (the "ID on Landano" and the "Basapas/Pasapas Report"). After reviewing the procedural sequence in the state and federal courts, the Appellate Division stated, "We believe that the record reflects the need for an evidentiary hearing relating to the prosecutor's conduct and its impact on

---

**11.** In fact, the district court used what it believed was the State's obstreperousness as a basis for the subsequent bail order:

> Since the State will not consent, despite its earlier agreement to do so, and has expressed its intent to violate the order of this Court to which it consented, the Court *must fashion its own remedy* to grant the parties and the Court the time needed to prepare and consider the issues raised.

Transcript of Proceedings, Civil Nos. 85–4777 and 89–2454, at 30 (D.N.J. May 2, 1991) (emphasis added).

**12.** The State's efforts to get a stay of the bail order on motion to this court was unsuccessful, and the matter was referred to a merits panel.

**13.** The State also sought reversal of the district court's denial of its motion to dismiss Landano's petition for habeas corpus.

the verdict." *State v. Landano*, A–4458–90TI, slip op. at 22 (N.J.Super.Ct.App.Div. March 12, 1992) (per curiam). The court continued, "If found to have merit, the 'newly discovered facts' resulting in new issues not raised ... in prior state court proceedings may well impact on the previously considered issues." *Id.* The court stated that these were "extraordinary circumstances" which require that the procedural rules barring consideration of issues not previously raised and reconsideration of previously raised issues "must give way to fundamental fairness in this post-conviction proceeding." *Id.*

The court directed Judge Walsh to hold an evidentiary hearing to consider the claims stemming from documentation that two people, including a witness at trial, failed to identify a photograph of Landano; the police department continuation report that a witness or witnesses identified Forni as the driver of the getaway car; and the failure to submit this information to Landano at or before his trial. The court also directed Judge Walsh to consider other claims including the impact of any lost or destroyed material.

We have been advised by counsel that pursuant to this direction, Judge Walsh has held an evidentiary hearing. To date no decision has been forthcoming. Under these circumstances, and because Landano remains at liberty on federal bail, we proceed to dispose of the State's appeal of the federal bail orders.

## II.

### JURISDICTION

The procedural sequence set forth gave rise to a series of motions in this court which we dispose of initially. Following the State's Petition for Permission to File an Appeal from the district court's order continuing Landano on bail, Landano filed a motion to dismiss that petition on the ground that the state had failed to comply with 28 U.S.C. § 1292(b) which requires

that, prior to seeking permission for certification of an interlocutory appeal, applicant must first seek certification from the district court.

■ Landano is indeed correct that an appeal from an interlocutory decision cannot be taken to a Court of Appeals pursuant to 28 U.S.C. § 1292(b) unless the district court states in writing that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Thus, were the order continuing Landano on bail an interlocutory order not otherwise appealable to this court, we would be required to deny the requested permission because of the absence of district court certification. However, that is not necessary in this case because rather than being an unappealable interlocutory order, the court's order granting bail pending disposition of a habeas petition is plainly appealable as a collateral order. *See United States v. Smith*, 835 F.2d 1048, 1050 (3d Cir.1987). Thus, the appeal of the most recent bail order of February 4, 1992, and the prior appeals of the first bail order by the district court are before us in the same procedural posture, *viz.*, as orders for bail pending review of a petition for habeas corpus.[14] Therefore, as long as there was a timely notice of appeal, no permission by this court was needed.

■ The Petition for Permission to Appeal itself may be treated as a Notice of Appeal. In *Smith v. Barry*, — U.S. —, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992), the Supreme Court interpreted Rule 3 of the Federal Rules of Appellate Procedure to permit a brief which was the "functional equivalent" of a notice of appeal to substitute for a notice of appeal as long as "the filing provides sufficient notice to other parties and the courts." *Id.* 112 S.Ct. at

---

**14.** The district court's denial of the State's motion to dismiss the successive habeas petition, on the other hand, is an interlocutory order, *see United States v. Liotard*, 817 F.2d 1074, 1077 n. 4 (3d Cir.1987), and, barring proper certification by the district court pursuant to 28 U.S.C. § 1292(b), we do not have jurisdiction to review it.

682.[15] The State's Petition for Permission to Appeal contained all of the elements required by Fed.R.App.P. 3(c)[16] and was timely filed. Therefore, we may treat it as a notice of appeal of Judge Sarokin's Order of February 4, 1992, continuing Landano on federal bail.[17]

Also pending before us is a motion filed by Landano to dismiss appeal nos. 91–5336 and 91–5337 as moot, on the ground that the original order granting bail has since been superseded by the district court's order of February 4, 1992. We note that in the latter order the district court stated that it was *continuing* Landano on bail pursuant to the same terms and conditions of the previous bail order. Under these circumstances, we believe it is more expeditious to consolidate the appeals from the two orders rather than to dismiss appeal nos. 91–5336 and 91–5337 as moot.

We therefore turn to the merits. The grant of bail is discretionary with the district judge; this court's review is under the abuse of discretion standard.

### III.

#### DISCUSSION

■ The issue presented is whether the requisite "extraordinary circumstances" exist for a grant of bail pending review by the federal court of Landano's habeas petition. Because the more recent appeal presents the case in its most up-to-date posture, we will reach it first and, in so doing, dispose of all appeals currently before us.

---

**15.** The filing of the motion for permission to appeal in the appellate court rather than the district court, as required by Fed.R.App.P. 3(a) is also not fatal to its effectiveness as a notice of appeal. *See* Fed.R.App.P. 4(a)(1); *Smith,* 112 S.Ct. at 682.

**16.** Fed.R.App.P. 3(c) states in relevant part:
The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken.

**17.** We entered an order directing that the Clerk treat the petition for permission to appeal as a

---

At the outset, it is necessary to distinguish between bail pending the district court's review of a petition for habeas relief and bail pending review by an appellate court of an order of the district court granting a writ of habeas corpus. The latter case is governed by Rule 23(c) of the Federal Rules of Appellate Procedure.[18] In *Hilton v. Braunskill,* 481 U.S. 770, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987), the Supreme Court held that when a writ has issued, the court has discretion to release the prisoner using "the traditional standards governing stays of civil judgments," *id.* at 774, 107 S.Ct. at 2118, such as likelihood of success on the merits, irreparable injury, injury to other parties, and the public interest. *Id.* at 776, 107 S.Ct. at 2119.

On the other hand, when bail is sought by a prisoner who has been convicted in either state or federal court and the district court has denied the collateral relief sought, the standard for bail is, of course, more stringent. As Justice Douglas stated in denying an application for bail pending review by the court of appeals of the district court's denial of a petition for a writ of habeas corpus:

This applicant is incarcerated because he has been tried, convicted, and sentenced by a court of law.... It is obvious that a greater showing of special reasons for admission to bail pending review should be required ... than ... in a case where applicant sought to attack by writ of habeas corpus an incarceration not resulting from a judicial determination of guilt.

---

notice of appeal, and filed *nunc pro tunc.* This appeal has been docketed as no. 92–5357 and consolidated with appeal nos. 91–5336 and 91–5337.

**18.** Rule 23(c) provides:
Pending review of a decision ordering the release of a prisoner in such a proceeding, the prisoner shall be enlarged upon the prisoner's recognizance, with or without surety, unless the court or justice or judge rendering the decision, or the court of appeals or the Supreme Court, or a judge or justice of either court shall otherwise order.

*Aronson v. May*, 85 S.Ct. 3, 5, 13 L.Ed.2d 6 (1964) (chambers opinion); *see also* Fed. R.App.P. 23(b).

A third category of bail cases arises when the district court has pending, but has not yet decided, a petition for habeas corpus. In *United States v. Smith*, 835 F.2d 1048, 1050 (3d Cir.1987), which presented such a situation, we applied the standards set forth in *Hilton*.[19] In *Calley v. Callaway*, 496 F.2d 701, 702 (5th Cir. 1974), where the bail issue was presented in a similar posture, the court held that bail pending post-conviction habeas corpus review was available "only when the petitioner has raised substantial constitutional claims upon which he has a high probability of success, and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *See also Martin v. Solem*, 801 F.2d 324, 329 (8th Cir.1986) (applying same standard).

Although *Smith* and *Calley* both concerned bail to a federal prisoner while a petition for habeas corpus was pending, there is precedent, including a direction by the Supreme Court, that affirms the authority of a federal court to grant bail to a state prisoner prior to ruling on the prisoner's petition for habeas corpus. *See In re Shuttlesworth*, 369 U.S. 35, 82 S.Ct. 551, 7 L.Ed.2d 548 (1962) (per curiam) (directing that after petitioner seeks bail from state court, district court should "proceed to hear and determine the cause, including any application for bail pending that court's final disposition of the matter"); *see also In re Wainwright*, 518 F.2d 173, 174 (5th Cir.1975) (per curiam) ("In spite of the lack of specific statutory authorization, it is within the inherent power of a District Court of the United States to enlarge a state prisoner on bond pending hearing and decision on his application for a writ of habeas corpus.").

Our court addressed the considerations to be taken into account in deciding whether to grant bail pending review of the habeas petition of a state prisoner in *Lucas v. Hadden*, 790 F.2d 365 (3d Cir.1986). We stated that the factual predicate for the exercise of such power was a finding of "extraordinary circumstances." This "standard reflects the recognition that a preliminary grant of bail is an exceptional form of relief in a habeas corpus proceeding." *Id.* at 367.

Very few cases have presented extraordinary circumstances, and those that have seem to be limited to situations involving poor health or the impending completion of the prisoner's sentence. In *Johnston v. Marsh*, 227 F.2d 528 (3d Cir.1955), where we held that the district court considering a petition for habeas corpus by a state prisoner had inherent power to admit the prisoner to bail, we found that bail was warranted because the prisoner was "an advanced diabetic [who] was, under conditions of confinement, rapidly progressing toward total blindness." *Id.* at 529. Notably, the decision did not place the prisoner at liberty but instead released him to a hospital for immediate treatment.

*Boyer v. City of Orlando*, 402 F.2d 966 (5th Cir.1968), illustrates the situation where bail has been awarded because the sentence was so short that if bail were denied and the habeas petition were eventually granted, the defendant would already have served the sentence. In that case, the Fifth Circuit directed the district court to release Boyer, who had been sentenced to 120 days in prison, on bail while he exhausted in the Florida courts his constitutional claim that because he was indigent, he was entitled to court-appointed counsel in the misdemeanor case. Notably, the Fifth Circuit had recently decided in other cases that there was such a constitutional right. The court stated that it was obliged to take extraordinary action to

---

**19.** Arguably, this standard was more liberal toward release from custody than warranted, inasmuch as *Hilton*, unlike *Smith*, involved a prisoner who had been granted habeas. Because Smith confined himself on appeal exclusively to the showing of likelihood of success on the

merits on the ground that a recent Supreme Court decision undermined all counts of his conviction, *see* 835 F.2d at 1050, there was no occasion to consider the exceptional circumstances issue.

make Boyer's exhaustion in the Florida courts truly effective, or his sentence would long have been served.

In light of the general principles reflected by the aforesaid authorities, we turn to examine the reasons given by the district court in this case in holding that Landano, a state prisoner, should be granted bail while he pursued his exhaustion of state remedies.

First, the district judge stated that it had " 'already determined that petitioner may be innocent of the charges for which he was convicted.' " *Landano v. Rafferty*, 782 F.Supp. 986, 992 (D.N.J.1992) (quoting *Landano v. Rafferty*, No. 91–1881, slip op. at 7 (D.N.J. May 6, 1991) (supplemental opinion and order)). The judge referred to his earlier discussion of the nature of the alleged exculpatory evidence which Landano had claimed was suppressed by the State during the trial, appearing in *Landano*, 126 F.R.D. at 644–45.

Second, the district judge stated that New Jersey has no provision for bail pending a petition for post-conviction relief, thereby making it impossible that Landano could get his desired relief, i.e. bail, through state proceedings. *Landano*, 782 F.Supp. at 993. The court stated next that the State has admitted that Landano posed no risk of flight, *id.*, and in fact "has demonstrated a commitment to 'clearing his name.' " In addition, in its earlier opinion of May 6, 1991, the district court found "that the state has acted at a level of bad faith sufficient to require this extraordinary form of relief." *Landano*, No. 91–1881, slip op. at 8. In particular, the court referred to the attempt by the State's officers to arrest Landano as soon as the New Jersey Supreme Court lifted its stay of arrest, even though the prosecutor had previously consented to the district court's order not to arrest Landano pending the court's action on Landano's habeas petition.

Finally, the court stated that the State had engaged in "prosecutorial maneuvering" that "could, if encouraged have the effect of contributing to inordinate delays

in the processing of [Landano's] claims for relief." *Landano*, 782 F.Supp. at 994.

We find the district court's analysis problematic. Taking the last reason first, it is far from clear that the prosecution can be faulted for creating any inordinate delays. The district court never previously made such a charge in any of its opinions. It is true that the state courts took a different view of the facts and applicable law than that held by the district court and thus the final disposition of this matter may seem overly extended to the district court, but we cannot see how this result, endemic to exhaustion of state remedies, would justify bail. No case, including *Glynn v. Donnelly*, 470 F.2d 95 (1st Cir.1972), relied on by the district court, holds that the delay resulting from exhaustion of state remedies is a special circumstance warranting federal bail. In any event, this reason given by the district court is disposed of by Landano's brief on appeal which expressly disclaims delay as an "extraordinary circumstance."

We also believe that the absence of bail in New Jersey is not an extraordinary circumstance warranting federal bail. The parties agree that New Jersey does not provide for bail pending review of post-conviction motions of convicted felons. *See State v. Rose*, 88 N.J.Super. 86, 210 A.2d 793, 794 (Law Div.1965).[20] Nevertheless, there is no federal constitutional right to bail pending appeal of a state conviction, *see Finetti v. Harris*, 609 F.2d 594, 597 (2d Cir.1979); *Marks v. Zelinski*, 604 F.Supp. 1211, 1213 (D.N.J.1985) (citing *Finetti*), and therefore it would be anomalous to regard its absence as an extraordinary circumstance. Furthermore, the New Jersey Supreme Court's action in staying the arrest of Landano after this court reversed the district court's grant of the writ was a procedure analogous to bail and served the same purpose. In fact, it was only after this stay was vacated on May 2, 1991, that the district court felt it necessary to grant bail.

---

**20.** Absent a decision to that effect by the New Jersey Supreme Court, we take no position as to

whether the absence of an explicit provision for bail means that bail is unavailable.

The district court's reliance on Landano's possible innocence raises different considerations. In *McClesky v. Zant*, — U.S. —, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991), the Court reiterated that a federal court may grant a writ of habeas corpus to a petitioner to avoid a "fundamental miscarriage of justice" when "a constitutional violation probably has caused the conviction of one innocent of the crime." *See also Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (courts in "extraordinary case" may excuse the petitioner from showing cause for procedural default "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"); *Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986) (discussing doctrine in context of procedural default at sentencing phase); *Sawyer v. Whitley*, — U.S. —, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) (same).

We find two problems with the district court's reliance on Landano's probable innocence as a basis for bail. First, the "probable innocence" cases arise in the context of granting the writ, not granting bail. Second, and more important, that line of cases addresses the federal court's right to overlook a procedural default, not a failure to exhaust state remedies. When the State has not completed its review of the petitioner's claims, it is inappropriate for a federal court to reach the merits of petitioner's case in ruling on a motion for bail.

The Supreme Court has emphasized that even in cases where a clear violation of the petitioner's rights was found, "considerations of federal-state comity would still inhere, and it would be unseemly in our dual system of government for the federal courts to upset a state-court conviction without affording the state courts the opportunity to correct a constitutional violation." *Duckworth v. Serrano*, 454 U.S. 1, 4, 102 S.Ct. 18, 20, 70 L.Ed.2d 1 (1981) (per curiam); *see also Caswell v. Ryan*, 953 F.2d 853, 857 (3d Cir.) (as a matter of comity, exhaustion " 'should be strictly adhered to because it expresses respect for our dual judicial system' " (quoting *Landano*, 897 F.2d at 668)), *cert. denied*, — U.S.

—, 112 S.Ct. 2283, 119 L.Ed.2d 208 (1992). As we noted in *Lucas*, "We doubt that it is appropriate to grant bail prior to ruling on a state habeas petition solely on the ground that there is a high likelihood of success on the merits...." 790 F.2d at 367.

As to the district court's impatience with the State's unwillingness to permit Landano to remain at liberty, we know of no principle that would require a state prosecutor to agree to order the Department of Corrections not to arrest a defendant when there is no legal impediment to such arrest. In light of the above, the district court's reliance on the small risk of Landano's flight would also not seem to rise to an extraordinary circumstance.

Although the district court purported to rely on *Lucas* as the principal authority warranting its decision that Landano had shown extraordinary circumstances, we believe that an analysis of *Lucas* leads to the opposite conclusion. In *Lucas*, this court held unanimously that the district court had improperly admitted the state prisoner to bail, inasmuch as the prisoner had failed to exhaust state remedies. In this case, the opinion of the Appellate Division of the New Jersey Supreme Court directing the state trial court to hold an evidentiary hearing demonstrates the Appellate Division's understanding and appreciation of the relevance of the newly found material that was suppressed. Under these circumstances, there is no reason for a federal court to intrude by directing that Landano be released on bail. Such a decision can be made, either as on bail or as a stay of arrest, by the New Jersey courts if they deem it appropriate.

Although the district court's decision on bail is one that should be accorded deference, we are satisfied that the district court gave inadequate weight to the important comity considerations that apply when a state court is reviewing the substance of the claim that its proceedings deprived the prisoner of a constitutional right. We thus conclude that Landano has not made the necessary showing of exceptional circumstances warranting bail.

## IV.

### CONCLUSION

For the reasons set forth, we will reverse the district court's orders granting bail and remand with directions that the district court turn the custody of Landano over to the appropriate state officials. Each party to bear its own costs.

SCIRICA, Circuit Judge, dissenting.

In this circuit, a habeas corpus petitioner may be granted bail pending disposition of his petition where "extraordinary circumstances" are present. *Lucas v. Hadden*, 790 F.2d 365 (3d Cir.1986). Here, the district court based its finding of extraordinary circumstances in part on a finding of probable innocence.[1] Because I believe a finding of probable innocence should override usual considerations of comity even when there is a lack of exhaustion, I respectfully dissent.

The majority "believe[s] that an analysis of *Lucas* leads" to the conclusion that no extraordinary circumstances justifying the district court's grant of bail are present here. Majority at 1241–42. I cannot agree. Landano, unlike Lucas, raises federal constitutional claims in his habeas petition. More importantly, the district court found, based on newly discovered evidence, that Landano "may be innocent of the charges for which he was convicted" and has "a likelihood approaching certainty of success on the merits." *Landano v. Rafferty*, 782 F.Supp. 986, 993 (D.N.J.1992).

*Lucas* involved a petitioner who alleged that upon his release on parole from federal prison, he was wrongly re-committed to state prison to serve a term that had run concurrently with his federal term. He "asserted no constitutional violation nor did he identify any violation of federal law that was alleged to be the cause of his confinement." *Lucas*, 790 F.2d at 366. Furthermore, Lucas, who had pleaded guilty to federal narcotics violations, made no showing of probable innocence. In that context, we stated: "We doubt that it is appropriate to grant bail prior to ruling on a state habeas petition solely on the ground that there is a high likelihood of success on the merits, especially absent exhaustion of state remedies." *Id.* at 367.

The circumstances here are fundamentally different from those in *Lucas*. Landano alleges that his conviction was unconstitutionally obtained through coerced testimony and the State's suppression of exculpatory evidence, and has convinced the district court of his probable innocence.

The Supreme Court has recognized a crucial distinction in its habeas corpus jurisprudence between a likelihood of success on the merits and a probability that a constitutional violation has resulted in the conviction of an innocent person. Generally, petitioners are denied federal habeas relief in cases of procedural default,[2] abuse of the writ,[3] or failure to develop a claim in state-court proceedings,[4] unless they can show cause and prejudice. However, these failings are excused in those "extraordi-

---

1. On July 27, 1989, the district court found that there was a "distinct possibility that [Landano], indeed, may be innocent of the charges for which he was convicted," and that there was "a substantial probability ... that the jury's verdict would have differed had [the suppressed evidence] been brought out at trial." *Landano v. Rafferty*, 126 F.R.D. 627, 649, 654 (D.N.J.1989), *rev'd on other grounds*, 897 F.2d 661 (3d Cir. 1990), *cert. denied*, — U.S. —, 111 S.Ct. 46, 112 L.Ed.2d 23 (1990). On May 6, 1991, and February 4, 1992, the district court found that Landano "may be innocent of the charges for which he was convicted." *Landano v. Rafferty*, Nos. 85–4777, 89–2454, slip op. at 7 (D.N.J. May 6, 1991); *Landano v. Rafferty*, 782 F.Supp. 986, 993 (D.N.J.1992). The district court is not alone in this view. A judge of this court has stated

that "the State's case [against Landano], erected upon a house of cards, has little, if any, credible foundation to it." *Landano*, 897 F.2d at 685 (Rosenn, J., dissenting). The *Landano* majority stated that it "join[ed] with the district court in finding Landano's new allegations deeply troubling," *id.* at 675 n. 23, but held that Landano had failed to exhaust his state remedies.

2. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

3. *McCleskey v. Zant*, — U.S. —, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Wise v. Fulcomer*, 958 F.2d 30 (3d Cir.1992).

4. *Keeney v. Tamayo–Reyes*, — U.S. —, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992).

nary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991). The Supreme Court's "probable innocence" or "miscarriage of justice" exception applies where a petitioner " 'establishe[s] that under the probative evidence he has a colorable claim of factual innocence,' " *i.e.,* where there is " 'a fair probability that, in light of all the evidence, including any alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt.' " *Sawyer v. Whitley,* —— U.S. ——, fn. 5, 112 S.Ct. 2514, 2519 fn. 5, 120 L.Ed.2d 269 (1992) (quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 454–55, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986); other citation omitted). Because the district court here found "a substantial probability ... that the jury's verdict would have differed had [the suppressed evidence] been brought out at trial," and that Landano "may be innocent of the charges for which he was convicted," *see supra* note 1, the probable innocence exception should apply.

The majority distinguishes the Supreme Court's probable innocence cases on the ground that those cases address "the federal court's right to overlook a procedural default, not a failure to exhaust state remedies." Majority at 1241. I believe this distinction is immaterial.

The probable innocence exception to the cause and prejudice requirement embodies the Court's belief that "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.' " *Murray v. Carrier,* 477 U.S. 478, 495, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (quoting *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982)). Yet, the majority says that "[w]hen the State has not completed its review of the petitioner's claims, it is inappropriate for a federal court to reach the merits of petitioner's case in ruling on a motion for bail." Majority at 1241. I can discern no reason why comity will not prevent correction of a fundamental miscarriage of justice in the context of procedural default, abuse of the writ, or failure to develop a claim, but will preclude relief absent exhaustion.

Moreover, the relief granted by the district court here poses little threat to comity. The doctrine of comity " 'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.' " *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982) (quoting *Darr v. Burford,* 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950)). The parties agree, and the district court found, that New Jersey does not provide for bail in cases like this one. *See Landano,* 782 F.Supp. at 995. Therefore, as the district court noted, there is no "affront to the state courts in this court retaining jurisdiction solely in order to extend bail, since New Jersey courts could not 'pass upon the matter' in any case." *Id.* Furthermore, because the district court held that Landano had not exhausted his state remedies, and therefore did not grant Landano's petition for writ of habeas corpus, the New Jersey courts will be afforded the first opportunity to correct their own constitutional errors, if any, as comity requires. In any event, *Lucas* states that comity must give way under "extraordinary circumstances."

Although "a preliminary grant of bail is an exceptional form of relief in a habeas corpus proceeding," *Lucas,* 790 F.2d at 367, our standard of review is abuse of discretion. I believe the district court did not abuse its discretion in holding that the factors it cited, especially Landano's probable innocence, justified the grant of bail pending exhaustion of state remedies.

SUR PETITION FOR REHEARING

Aug. 11, 1992.

Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD and ROTH, Circuit Judges.

The petition for rehearing filed by Vincent James Landano in the above-entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied. Judge Scirica and Judge Nygaard would grant rehearing in banc.