78 A.3d 574

IN THE MATTER OF NEW JERSEY DEPARTMENT OF ENVIRON-
MENTAL PROTECTION CONDITIONAL HIGHLANDS APPLI-
CABILITY DETERMINATION, PROGRAM INTEREST NO.
435434.

Superior Court of New Jersey
Appellate Division

Argued September 24, 2012—Decided May 13, 2013.

Before Judges GRAVES, ESPINOSA and GUADAGNO.

*Neil Yoskin* argued the cause for appellant Friends of Fairmount Historic District (*Sokol, Behot & Fiorenzo,* attorneys; *Mr. Yoskin,* of counsel and on the brief; *Steven Siegel,* on the brief).

*Lisa G. Daglis,* Deputy Attorney General, argued the cause for respondent New Jersey Department of Environmental Protection (*Jeffrey S. Chiesa,* Attorney General, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Ms. Daglis,* on the brief).

*Christopher J. McAuliffe* argued the cause for respondent Jersey Central Power & Light Company (*Morgan, Lewis & Bockius, LLP,* attorneys; *Mr. McAuliffe,* on the brief).

*Courter, Kobert & Cohen,* attorneys for respondent Township of Tewksbury (*Michael S. Selvaggi,* of counsel; *Richard W. Wenner,* on the brief).

*Susan J. Kraham* argued the cause for amicus curiae New Jersey Highlands Coalition (*Morningside Heights Legal Services, Inc., Environmental Law Clinic, Columbia University,* attorneys; *Ms. Kraham* and *Edward Lloyd,* on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

Friends of Fairmount Historic District (FFHD) appeals from a final agency decision of the Department of Environmental Protection (DEP or the Department). This is FFHD's second challenge to the construction of a 230 kV/12.5 kV electrical substation by Jersey Central Power & Light (JCP & L) in Tewksbury Township. The substation was built to address repeated power outages in Tewksbury caused by an increased demand for electricity. For the reasons that follow, we affirm.

Previously, FFHD appealed from a final determination of the Board of Public Utilities (BPU or the Board) that found the substation necessary and authorized JCP & L to proceed with construction of the substation. We briefly summarize the facts and conclusions set forth in our unpublished opinion, *In re Appeal of Jersey Cent. Power & Light Co.*, No. A–2150–09, 2011 *WL* 446046 (App.Div. Feb. 10, 2011) *(In re JCP & L)*, *certif. denied*, 207 *N.J.* 65, 22 *A.*3d 974 (2011).

JCP & L filed an application with Tewksbury's Land Use Board (TLUB) seeking preliminary and site plan approval and certain variances required for the construction of the substation. TLUB denied the application in December 2008 and, thereafter, issued a resolution memorializing its decision.

In January 2009, JCP & L filed a petition with BPU pursuant to *N.J.S.A.* 40:55D–19, seeking authorization to construct the substation, notwithstanding TLUB's denial of its application. BPU found the substation necessary, noting that residential customers in the area increased by thirty-percent between 1999 and 2006, resulting in twenty-percent overloads during peak periods, and that the substation as planned and placed would help to ensure adequate voltage levels. On September 14, 2009, the Board issued a Decision and Order authorizing JCP & L to construct, install and operate the substation.

In its appeal from that decision, FFHD argued that BPU's decision should be reversed because it: gave insufficient weight to TLUB's decision and analysis in reviewing JCP & L's appeal; should have deferred to the analysis and determination of TLUB in its evaluation of the effect of the proposed substation on the community zone plan; failed to adequately analyze the safety issues while granting relief; failed to adequately analyze the economic impact of the proposed substation on the property values of the adjacent homes and the historic district; and failed to sufficiently examine the alternative site analysis provided by JCP & L.

We rejected these arguments, concluding that BPU undertook the analysis required by *In re Pub. Serv. Elec. & Gas Co.*, 35 *N.J.* 358, 173 *A.*2d 233 (1961), and that there was sufficient credible evidence to support the Board's findings and decision. *In re JCP & L, supra,* at 13.

The substation has now been built on property that lies within JCP & L's existing right-of-way, under the transmission lines carrying 230 kV of electricity from Chester to Glen Gardner that were in place. The property is also within a residential zone in Tewksbury's Lower Fairmount National Historic District, as well as in the Preservation Area established by the Highlands Water Protection and Planning Act (the Highlands Act), *N.J.S.A.* 13:20–1 to –35; *N.J.S.A.* 13:20–7(b). In this appeal, FFHD challenges the final agency decision of DEP to grant JCP & L an exemption from the Highlands Act for the substation.

In October 2007, JCP & L applied to DEP's Division of Watershed Management for a Highlands Applicability Determination (HAD), *N.J.A.C.* 7:38–2.4, that the substation was exempt from the Highlands Act. *N.J.S.A.* 13:20–28(a)(11) provides an exemption "from the provisions of this act, the regional master plan, any rules or regulations adopted by the Department of Environmental Protection pursuant to this act, or any amendments ..." for

> the routine maintenance and operations, rehabilitation, preservation, reconstruction, repair, or upgrade of public utility lines, rights of way, or systems, by a public utility, provided that the activity is consistent with the goals and purposes of this act[.]

*See also N.J.A.C.* 7:38–2.3(a)(11) (Exemption # 11). DEP issued the HAD in November 2008, determining that the substation fell within this exemption.

FFHD sought to challenge the exemption by requesting a third-party administrative hearing in the Office of Administrative Law. The DEP Commissioner denied FFHD's request, but stayed the exemption and remanded the matter to the Division of Watershed Management to "determine whether the exemption [was] appropriate, and to issue a written articulation of appropriate findings concerning its final decision[.]" DEP directed that the amended

decision would be effective upon issuance, with time limits for administrative hearings or appeals to run from the date of issuance.

Pursuant to this referral, the Division of Watershed Management issued an Amended HAD, dated July 15, 2009, in which it explicitly deferred to BPU for the determination as to the necessity of the substation:

> JCP & L is a public utility regulated by [BPU]. JCP & L maintains a Tariff for Service with BPU, which requires that JCP & L maintain regular and uninterrupted electric service to its customers. The Department does not have the expertise to assess statements concerning the need to expand existing electrical systems, and defers to the BPU or other appropriate agency, to make a final determination in this regard.

Accordingly, DEP accepted JCP & L's representations regarding necessity for the purposes of the application subject to its review and concluded that, "to minimize the amount of construction, disturbance, and environmental impact on Highlands resources, the substation must be located as near as possible to the 230 kV line."

The Amended HAD then addressed the suitability of the site:

> The proposed site is located within Tewksbury Township's Lower Fairmont [sic] National Historic District. An existing 230 kilovolt (kV) transmission line (JCP & L's existing Chester-to-Glen Gardner Transmission Line) already traverses the northern portion of the property. Immediately adjacent to the subject property are two existing transmission towers, each approximately 150 feet tall and one telecommunication structure. Residential properties abut the project location on three sides, but the homes themselves are more than 300 feet away from the proposed substation, in compliance with the 300-foot fire safety buffer for electrical substations set by the Department of Community Affairs and JCP & L.

Noting that the range of possible locations for the substation was limited by service reliability issues, the Amended HAD went on to discuss its evaluation of the nine sites along the 230 kV high tension line that could support the proposed substation. Each of the sites had "multiple environmental and cultural features of concern." Six of the sites were within a historic area and the remaining three were either Green Acres parcels or Preserved Farmland, which eliminated them from consideration. DEP observed that "none of the lots would require less impact for access

and construction of the substation [than the proposed site], and many of the lots evaluated would require more disturbance." After the sites with more conflicts than the proposed site were eliminated, there were two possible alternative sites, neither of which were "clearly preferred from a resource protection perspective over the selected site." DEP concluded that "no alternative site exists that has fewer conflicts with Highlands resources than the selected site."

DEP noted that JCP & L made efforts to decrease the impact from the substation. It reduced the number of transformers, "eliminated all proposed disturbance to freshwater wetlands and minimized the disturbance of wetlands transition areas and Highlands open water buffers." DEP also observed that, in addition to reducing the disturbance caused by the substation, JCP & L proposed to lessen the aesthetic impact of the substation:

> Lastly, JCP & L proposes to include landscaping effective at screening the substation from adjacent properties and roads, thereby reducing the project's impact on scenic resources and the Fairmont [sic] Historic District.

The Amended HAD concluded that "the project/activity is exempt from the permitting requirements of the Highlands Act pursuant to *N.J.S.A.* 13:20–28(a)(11) and *N.J.A.C.* 7:38–2.3[.]" This conclusion was made subject to conditions that DEP deemed "necessary for the project to achieve consistency with the goals of the Highlands Act[,]" including:

> 1. Prior to construction, JCP & L shall submit to the Highlands Council for review and approval an extensive landscape plan, using native plant species, to screen the substation from adjacent homes and roadways and complement the character of the existing historic district. *Failure to implement the approved landscape plan shall constitute a violation of this exemption and the Highlands Act.*
>
> 2. This exemption is limited to the replacement or rehabilitation or upgrade of existing infrastructure and does not authorize any extension of new public infrastructure in the Highlands Preservation Area. These improvements shall serve existing development except for development that is exempt from the permitting requirements of the Act or the subject of court order. *Should the BPU determine in writing that the system upgrade described is not necessary, this exemption shall be null and void from the date of that determination.*
>
> [Emphasis added.]

Although both paragraphs describe "conditions" to the determination that the project fell within the exemption, DEP identified different requirements for JCP & L to satisfy as to each and different consequences for a failure to meet those requirements. As for the landscape plan, JCP & L was required to submit a landscape plan for review and approval. The exemption was not contingent upon approval of the landscape plan and, in the event JCP & L failed to implement an "approved landscape plan," the failure constituted a violation of the exemption and the Highlands Act, but did not nullify the exemption. In contrast, a failure to secure BPU approval rendered the exemption "null and void" as of the date BPU issued a written determination that the system upgrade is not necessary. These conditions were set in July 2009 and, in September 2009, BPU rendered the final agency decision that was the subject of FFHD's prior unsuccessful appeal, concluding that the substation was necessary. Thus, the only applicable condition [1] which, if unsatisfied, would nullify DEP's conclusion, was met within two months of the Amended HAD.

FFHD appealed the Amended HAD, once again seeking an adjudicatory hearing. DEP rejected FFHD's request for an adjudicatory hearing, citing lack of standing.

JCP & L submitted a revised landscape plan to the Highlands Council in December 2009. Because the plan was subject to height restrictions, it could not completely screen the substation's nineteen-foot transformer unit and sixty-five-foot tower poles or the wires connecting to the 230 kV transmission lines.

In June 2010, the Highlands Council submitted its review of the landscape plan to DEP. Although the scope of the review required

---

[1] A third condition nullified the determination "if changes are made to the project that would increase the scope or area disturbed by the project or result in a change in the use or change the method of wastewater treatment; or if the information submitted to obtain this determination from the Department is later determined to be inaccurate." There has been no allegation that there was such a change to the project or that inaccurate information was submitted to the Department.

by DEP appeared limited to consideration of the elements identi-
fied in the plan, i.e., a plan that used "native plant species, to
screen the substation from adjacent homes and roadways and
complement the character of the existing historic district[,]" the
review conducted by the Highlands Council was more extensive.
The Council assessed the plan to determine whether it was
"consistent with the goals and purposes of" the Highlands Act and
the Regional Master Plan (RMP), and subjected it to the stan-
dards applicable to a Highlands Preservation Area Approval set
forth in *N.J.A.C.* 7:38–3.10. The Council concluded:

> [T]he Landscape Plan submitted by JCP & L will not adequately "screen the
> substation from adjacent homes and roadways and complement the character of the
> existing historic district" as required by NJDEP's conditional HAD and is also not
> consistent with the goals and purposes of the Highlands Act. Accordingly, the
> Highlands Council does not approve the submitted Landscape Plan. It is the
> recommendation of Highlands Council that the submitted Landscape Plan be found
> to not satisfy the condition of the NJDEP exemption # 11 and that the proposal is
> not consistent with the goals and purposes of the Highlands Act.

By letter dated February 4, 2011, DEP issued its "review and
final decision" regarding the substation. DEP noted that the
Highlands Council did not approve JCP & L's landscape plan and
then addressed the Highlands Council's "recommend[ation] that
the submitted Landscape Plan be found to not satisfy the condi-
tion of Exemption # 11 and that the proposal is not consistent
with the goals and purposes of the Highlands Act." The final
decision letter clarified that the request for review of the land-
scape plan did not include a request that the Highlands Council
analyze the applicability of the exemption:

> While Condition 1 of the July 15, 2009 "Amended Decision" required JCP & L to
> submit an "extensive" Landscape Plan to the Highlands Council for review and
> approval, it was not the Department's intent to delegate its authority to make a
> final determination on JCP & L's compliance with the amended HAD or any HAD
> condition to the Highlands Council.[2]

---

[2] As noted, the Highlands Council's analysis included a review of the land-
scape plan to determine whether it was consistent with the goals and purposes of
the Highlands Act and the RMP. The Amended HAD rejected such an analysis,
stating, "compliance with the resource policies, goals, objectives, programs and
requirements of the RMP, is not inherent or required in order to be determined

DEP's final decision then reviewed the basis for its determination that the exemption applied. It had focused on the fact that, by providing exemption provisions, "the Legislature determined it was appropriate to enable certain activities and developments in the Highlands Area to proceed without the permitting review by the Department otherwise required" under the Highlands Act. Quoting Exemption #11, the letter stated, "The Department previously decided that the proposed JCP & L substation, which the Board of Public Utilities determined to be necessary and on a site acceptable for utility purposes, qualifies under Exemption #11 as an upgrade to a public utility system."

In the final decision letter, DEP also took issue with the standard the Highlands Council had applied in rejecting JCP & L's landscape plan. It noted that Condition 1 of the Amended HAD had looked "for minimization and not elimination of adverse impacts." Rather than evaluate minimization, DEP observed that the Highlands Council imposed "the additional requirement that 'effective' screening and 'adequate' blocking of views must be accomplished." DEP noted that, as a practical matter and for safety reasons, the landscape plan could not screen the tower pole and connections to the existing transmission lines from view, and stated, "The Department is aware of no legal authority or government practice in New Jersey that requires a public utility to screen a 65 foot utility tower from view."

The final decision letter summarized DEP's conclusion as follows:

[T]he Department finds that the Landscape Plan meets the condition required in the July 15, 2009 "Amended Decision" to the previously issued November 6, 2008 HAD, which found the proposed project exempt under Exemption #11 of the Highlands Water Protection and Planning Act. Further, the Department has determined that JCP & L has satisfied condition #1 of the aforementioned Amended Decision.

---

exempt from the Highlands Act." This conclusion is supported by the statutory language. Although *N.J.S.A.* 13:20–28(a)(11) requires the activity to be "consistent with the goals and purposes of this act[,]" it does not require the activity to be consistent with the RMP to qualify as an exemption.

In this appeal, FFHD argues that DEP's final decision was wrong as a matter of law because the substation was not a "routine upgrade" of a public utility system. In the alternative, FFHD argues that the decision was arbitrary, capricious and unreasonable.

JCP & L argues that the appeal is moot, since the substation has already been built. "An issue is 'moot' when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy." *Greenfield v. N.J. Dep't of Corrs.*, 382 *N.J.Super.* 254, 257–58, 888 *A.*2d 507 (App.Div.2006). However, an appeal will not be moot when "a party still suffers from the adverse consequences . . . caused by [the prior] proceeding[.]" *N.J. Div. of Youth & Family Servs. v. A.P.*, 408 *N.J.Super.* 252, 262, 974 *A.*2d 466 (App.Div.2009) (internal quotation marks omitted), *certif. denied*, 201 *N.J.* 153, 988 *A.*2d 1176 (2010). Here, the "adverse consequences" persist as long as the substation exists and presumably could be reversed if the substation were demolished. We therefore decline to dismiss the appeal as moot.

DEP and JCP & L also argue that FFHD's challenge to the Amended HAD is barred as untimely. They contend that the Amended HAD was a final agency decision and, therefore, FFHD had to appeal that decision "within 45 days from the date of service of the decision or notice of the action taken." *R.* 2:4–1(b). They submit that the appeal is only timely with regard to DEP's February 4, 2011 decision. We disagree.

The Amended HAD contained certain characteristics of a final agency decision, i.e., adequate factual and legal conclusions, *see In re CAFRA Permit No. 87–0959–5*, 152 *N.J.* 287, 299, 704 *A.*2d 1261 (1997); and provided notice of the right to seek an adjudicatory hearing, *see De Nike v. Bd. of Trs.*, 34 *N.J.* 430, 435, 170 *A.*2d 12 (1961). However, "an agency action does not become final until all avenues of internal administrative review have been exhausted." *Bouie v. N.J. Dep't of Cmty. Affairs*, 407 *N.J.Super.* 518, 527, 972 *A.*2d 401 (App.Div.2009). The Amended HAD

directed JCP & L to seek the Council's approval of the landscape plan *"prior to construction."* (Emphasis added). Thus, although DEP determined that the substation fit within Exemption # 11, the Amended HAD made clear that construction could not commence until the Council ruled on the project. It was not until DEP issued its final decision, reaffirming its determination regarding the application of the exemption and concluding that the conditions in the Amended HAD were satisfied, that the agency decision became final. We therefore turn to the merits of FFHD's appeal.

█ The scope of our review in an appeal from a final decision of an administrative agency is limited. *Circus Liquors, Inc. v. Governing Body of Middletown Twp.*, 199 *N.J.* 1, 9, 970 *A.*2d 347 (2009). We must sustain the agency's action in the absence of a " 'clear showing' that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record[.]" *Ibid.* Furthermore, an appellate court may not substitute its judgment for the fact-finding of an administrative agency. *Campbell v. N.J. Racing Comm'n,* 169 *N.J.* 579, 587, 781 *A.*2d 1035 (2001). " 'If the Appellate Division is satisfied after its review that the evidence and the inferences to be drawn therefrom support the agency head's decision, then it must affirm even if the court feels that it would have reached a different result itself.' " *Ibid.* (quoting *Clowes v. Terminix Int'l, Inc.,* 109 *N.J.* 575, 588, 538 *A.*2d 794 (1988)). However, as to questions of law,

> we are in no way bound by an agency's interpretation of a statute or its determination of a strictly legal issue, particularly when that interpretation is inaccurate or contrary to legislative objectives[.] Like all matters of law, we apply *de novo* review to an agency's interpretation of a statute or case law.
>
> [*Russo v. Bd. of Trs., Police & Firemen's Ret. Sys.,* 206 *N.J.* 14, 27, 17 *A.*3d 801 (2011) (internal citations and quotation marks omitted).]

Moreover, pertinent to our review here, any exemption from a comprehensive legislative "policy designed to protect environmental interests" must be "strictly construed." *M. Alfieri Co., Inc. v. N.J. Dep't of Envtl. Prot. & Energy,* 269 *N.J.Super.* 545, 554, 636 *A.*2d 87 (App.Div.1994), *aff'd o.b.,* 138 *N.J.* 642, 651 *A.*2d 99 (1995).

■ FFHD argues that DEP erred as a matter of law in determining that Exemption # 11 applied to the substation project. FFHD contends that the $5 million construction project is not merely a "routine upgrade" within the meaning of *N.J.S.A.* 13:20–28(a)(11) and that the project is not consistent with the goals and purposes of the Act. We disagree.

In support of its argument, FFHD notes that Exemption # 11 is one of only two of the statutory exemptions which require "that the activity is consistent with the goals and purposes of [the] act[.]" As FFHD points out, those objectives include to "preserve farmland and historic sites and other historic resources[,]" *N.J.S.A.* 13:20–10(b)(4); and to "prohibit or limit to the maximum extent possible construction or development which is incompatible with preservation of this unique area[,]" *N.J.S.A.* 13:20–10(b)(9).

At the outset, we note that the substation project did not entail new development or the taking of any farmland or historic sites. The activity associated with the project relevant to the goals highlighted by FFHD is the construction of the substation itself. And, even if the construction were deemed to be "incompatible with preservation," the objective does not require outright prohibition. By its language, the objective is also served by "limit[ing the activity] to the maximum extent possible[.]"

Turning to the language of the Amended HAD, the conditions attached specify that the exemption was designed to "serve existing development." The exemption explicitly "does not authorize any extension of new public infrastructure in the Highlands Preservation Area" and "is limited to the replacement or rehabilitation or upgrade of existing infrastructure[.]" The exemption was, therefore, carefully circumscribed to meet the failed electricity needs of residents in the Preservation Area while "limit[ing] to the maximum extent possible" the construction necessary for that objective. We therefore reject FFHD's argument that the exemption as applied to the substation project is not consistent with the goals and purposes of the Act.

■ FFHD also argues that the substation project did not qualify as a "routine ... upgrade of public utility lines, rights-of-way, or systems" under the exemption. It contends that the magnitude of the project here, costing $5 million, and including a nineteen-foot transformer, a thirty-five-foot-tall bus system, electrical control cabinets, switching devices and towers approximately sixty-five feet tall, is inconsistent with a routine upgrade. In response, DEP contends that FFHD distorts the meaning of the exemption language; that the Legislature intended the word "routine" to modify "maintenance and operations" and not the other exempted activities, i.e., "rehabilitation, preservation, reconstruction, repair, or upgrade of public utility lines, rights of way, or systems, by a public utility[.]" *N.J.S.A.* 13:20–28(a)(11). Neither "routine" nor "upgrade" are defined in the statute.

The Amended HAD observed that JCP & L's Tariff for Service with BPU requires that it "maintain regular and uninterrupted electric service to its customers." As we observed in FFHD's prior appeal, BPU determined that the proposed substation "is necessary to provide safe, adequate and reliable electrical service in the Tewksbury area" and "is necessary for the service, convenience and welfare of the public[.]" *In re JCP & L, supra,* at 7. Given JCP & L's obligation and BPU's findings, it appears clear that, even if the exemption is interpreted as requiring that an upgrade be "routine," a project that is limited to what is necessary to satisfy JCP & L's duty to provide "regular and uninterrupted electric service to its customers" falls within the exemption intended by the Legislature.

■ FFHD also argues that DEP's decision was arbitrary, capricious and unreasonable, in part because it failed to give appropriate deference to the Highland Council's recommendation. Again, we do not agree.

Pursuant to its enabling statute, DEP is charged with the responsibility to "formulate comprehensive policies for the conservation of the natural resources of the State, the promotion of environmental protection and the prevention of pollution of the

environment of the State." *N.J.S.A.* 13:1D–9; *In re Adoption of N.J.A.C. 7:15–5.24(b),* 420 *N.J.Super.* 552, 574, 22 *A.*3d 94 (App. Div.), *certif. denied,* 208 *N.J.* 597, 34 *A.*3d 779 (2011). Regulations applicable to the statutory exemptions were, in fact, adopted by DEP. *N.J.A.C.* 7:38–2.3. As we have discussed, DEP did not intend to delegate that function to the Highlands Council here and noted that the Council exceeded its mandate in issuing a "recommendation" that the exemption did not apply. DEP was not required to defer to that recommendation in the face of countervailing evidence that established the applicability of the exemption.

Affirmed.