**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3616-20

IN THE MATTER OF
PROPOSED CONSTRUCTION
OF COMPRESSOR STATION
(CS327), OFFICE BUILDING
AND APPURTENANT
STRUCTURES, HIGHLANDS
APPLICABILITY
DETERMINATION, PROGRAM
INTEREST NO. 1615-17-0004.2
(APD200001).

_____

Argued February 8, 2023 – Decided August 31, 2023
Remanded by the Supreme Court August 6, 2024
Reargued May 13, 2025 – Decided June 27, 2025

Before Judges Gilson, Firko, and Augostini.

On appeal from the New Jersey Department of Environmental Protection.

Daniel A. Greenhouse argued the cause for appellants Food & Water Watch, New Jersey Highlands Coalition, and Sierra Club (Eastern Environmental Law Center, attorneys; Daniel A. Greenhouse, on the briefs).

Kristina L. Miles, Deputy Attorney General, argued the cause for respondent New Jersey Department of Environmental Protection (Matthew J. Platkin,

Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Kathrine M. Hunt, Deputy Attorney General, on the brief).

Richard G. Scott argued the cause for respondent Tennessee Gas Pipeline Company, LLC (Rutter & Roy, LLP, attorneys; Richard G. Scott, Christine A. Roy, and Monica N. Stahl, on the brief).

PER CURIAM

As part of an upgrade to its natural gas pipeline system, Tennessee Gas Pipeline Company, LLC (Tennessee Gas) sought permission to construct a compressor station and related facilities (Compressor Station 327) in West Milford, which is within the Highlands Preservation Area. In June 2021, the New Jersey Department of Environmental Protection (the DEP) issued a Highlands Applicability Determination (HAD) to Tennessee Gas, finding that the project qualified for an exemption and that the project was consistent with the goals and purposes of the Highlands Water Protection and Planning Act (the Highlands Act), N.J.S.A. 13:20-1 to -35, as well as the applicable Northeast Water Quality Management Plan (WQM Plan).

The New Jersey Supreme Court has held that Compressor Station 327 meets the statutory definition for an exemption to the permit requirements of the Highlands Act as an upgrade of a public utility line under N.J.S.A. 13:20-28(a)(11) (Exemption 11). In re Proposed Constr. of Compressor Station

2                                                                              A-3616-20

(CS327) (Compressor II), 258 N.J. 312, 331 (2024).  This matter now returns to us on remand from the Supreme Court to review whether the DEP erred in determining that Compressor Station 327 is an activity consistent with the goals and purposes of the Highlands Act.  We also consider the related issue of whether the DEP erred in determining that the project was consistent with the WQM Plan.  Having reviewed the extensive record, we discern nothing arbitrary, capricious, or unreasonable in the DEP's determinations.  Therefore, we reject all of appellants' challenges and affirm the HAD.

I.

The construction of Compressor Station 327 has been extensively reviewed.  The DEP has conducted two reviews of the project.  We previously considered an appeal by Food & Water Watch, New Jersey Highlands Coalition, and Sierra Club challenging the DEP's June 2021 HAD.  In re Proposed Constr. of Compressor Station (CS327) (Compressor I), 476 N.J. Super. 556 (App. Div. 2023).  The Supreme Court thereafter considered certain issues raised in that appeal.  Compressor II, 258 N.J. at 322-23.  There was also a separate, but related, review by the Federal Energy Regulation Commission (FERC) and an appeal to the United States Court of Appeals for the District of Columbia Circuit.  Food & Water Watch v. Fed. Energy Regul. Comm'n (Food & Water), 104 F.4th

336 (D.C. Cir. 2024). We summarize the project's history of reviews to place the remaining issues on this appeal in context.

Tennessee Gas owns and operates a natural gas pipeline system that runs from Texas to the eastern part of the United States. Part of that system runs from western Pennsylvania through New Jersey and into New York (the 300 Line). Id. at 341. In June 2020, Tennessee Gas, which transports natural gas in interstate commerce and is regulated under federal laws, applied to FERC for a certificate of public convenience and necessity to construct and operate upgrades to its 300 Line. Those upgrades included Compressor Station 327, which would help move larger volumes of natural gas to meet increased demands in Westchester County, New York.

FERC conducted an extensive review and issued a certificate allowing Tennessee Gas to upgrade its 300 Line by constructing several new compressor stations, including Compressor Station 327. Id. at 342. As part of its review, FERC addressed a range of environmental impacts, including the project's impact on air and water quality, as well as greenhouse gas emissions. The FERC staff prepared an environmental assessment that concluded that the project "would not constitute a major action significantly affecting the quality of the human environment."

4

Because Compressor Station 327 was proposed to be in the Highlands Preservation Area, in August 2020, Tennessee Gas also applied for a HAD. It requested that the DEP find that the proposed station was exempt from the Highlands Act under Exemption 11. Exemption 11 exempts utility projects from the Highlands Act's permitting requirements if the project is for "routine maintenance and operations, rehabilitation, preservation, reconstruction, repair, or upgrade of public utility lines, rights of way, or systems, by a public utility, provided that the activity is consistent with the goals and purposes of [the Highlands Act]." N.J.S.A. 13:20-28(a)(11). In addition, the DEP must find that the project is consistent with the WQM Plan. N.J.A.C. 7:38-2.4(a)(3); Compressor II, 258 N.J. at 319.

Tennessee Gas sought to construct Compressor Station 327 on a forty-seven-acre property, which had previously been used as a gravel quarry, pipe storage yard, and recycling storage facility. The compressor was to be powered by an electric motor, and the station would include auxiliary equipment, including a generator, an office building, and a septic system.

Tennessee Gas also submitted a copy of its complete HAD application to the Highlands Water Protection and Planning Council (the Highlands Council). On October 16, 2020, the Highlands Council informed the DEP that it would not

object to Tennessee Gas' HAD application. The Highlands Council stated that Tennessee Gas' "efforts to avoid, minimize and mitigate . . . resource impacts [were] sufficient to find that the project is consistent with the goals of the Highlands Act," because Compressor Station 327 will be located on a "historically disturbed" property where "[c]ritical wildlife habitat areas [were] disconnected and non-functional." The Highlands Council also found that the "Highlands [o]pen [w]ater [b]uffers and [r]iparian [a]reas [were] non-functional as they [were] disconnected from waterbodies which lie off site." So, the Highlands Council concluded that Compressor Station 327 would cause minimal impacts to Highland resources and Tennessee Gas would minimize and mitigate those impacts.

On June 23, 2021, the DEP issued a HAD (the 2021 HAD), which determined Compressor Station 327 qualified under Exemption 11. The DEP also adopted the Highlands Council's analysis, finding that the station was consistent with the goals of the Highlands Act. Additionally, the DEP found that Compressor Station 327 would be consistent with the WQM Plan because the station's proposed use of water would be less than 650 gallons per day and the wastewater output would be less than 2,000 gallons per day.

6

In 2022, appellants filed their first appeal challenging the 2021 HAD. They argued that all activities under Exemption 11 had to be "routine," and the DEP had erred in issuing the 2021 HAD without finding that the upgrade was routine. We agreed with appellants' statutory interpretation of Exemption 11 and held that "routine" applied to upgrades. We, therefore, vacated the 2021 HAD and remanded the matter to the DEP to consider whether Compressor Station 327 qualified as a "'routine upgrade' to its pipeline system." Compressor I, 476 N.J. Super. at 574.

On remand, Tennessee Gas submitted additional information to the DEP and requested a new HAD and WQM Plan consistency determination. The DEP then allowed further public comments and conducted further review. On January 11, 2024, DEP issued a new HAD (the 2024 HAD), finding that Compressor Station 327 qualified under Exemption 11 as a routine upgrade. The DEP also found that the station was consistent with the goals and purposes of the Highlands Act and the WQM Plan. The 2024 HAD also considered a report prepared by the staff of the Division of Land Resource Protection, which analyzed the project (the Staff Report). The Staff Report explained that the Highlands Council had again reviewed the project in 2023 and confirmed its

prior findings that the project was consistent with the goals and purposes of the Highlands Act.

Meanwhile, two things occurred. First, Tennessee Gas constructed and began to operate Compressor Station 327. Tennessee Gas has explained that it undertook that construction following approval from FERC. Moreover, we note that appellants did not move to stay the 2021 or 2024 HADs issued to Tennessee Gas.

Second, in February 2024, the Supreme Court accepted Tennessee Gas' petition to appeal our decision in Compressor I. See In re Proposed Constr. of Compressor Station (CS327), 256 N.J. 350 (2024). On August 6, 2024, the Court reversed our ruling and held that "routine" as used in Exemption 11 "modifies only 'maintenance and operations' and does not modify 'upgrade.'" Compressor II, 258 N.J. at 331. The Court vacated our decision, thereby reinstating the 2021 HAD. The Court then remanded the matter to us to consider whether Compressor Station 327 was an activity consistent with the goals and purposes of the Highlands Act, an issue we had not reached in Compressor I. See id. at 332.

In construing Exemption 11, the Court held that the exemption had "three components." Id. at 328. "First, an activity must either be 'routine maintenance

and operations, rehabilitation, preservation, reconstruction, repair, or upgrade.'"

Ibid. "Second, that activity must be conducted by a public utility to its lines, rights of way, or system." Ibid. "Third, the activity must be consistent with the goals of the Highlands Act." Ibid.

The Court then stated:

> We add that the first statutory requirement for Exemption 11 is met here. See N.J.S.A. 13:20-28(a)(11). The second requirement -- that the action be performed "by a public utility," is undisputed here. Ibid. As for the third requirement -- "that the activity is consistent with the goals and purposes of [the Highlands A]ct," -- the Appellate Division did not reach it because of its holding regarding the word "routine."
>
> [Compressor II, 258 N.J. at 331 (alteration in original) (citation omitted).]

The Court then provided "the following guidance upon remand."

> There is no dispute that, as the Appellate Division stressed, the Highlands Act is intended to protect and preserve the pristine natural resources of the Highlands region. N.J.S.A. 13:20-2. But the statute also recognizes "that residential, commercial, and industrial development, redevelopment, and economic growth" is in the best interests of this State. Ibid. Indeed, the Legislature further instructs that all activities undertaken in the region be committed to effectuating its environmentally protective purpose, "while also providing every conceivable opportunity for appropriate economic growth and development to

advance the quality of life" in this State. Ibid. (emphasis added).

With respect to Compressor Station 327, it is undisputed that this project is within the preservation area, which is subject to "stringent water and natural resources protection standards, policies, planning and regulation." Ibid. The goals of the preservation area are chiefly to promote preservation and conservation, N.J.S.A. 13:20-10(b)(1) to (8), but the final goal explicitly states that development should be limited to the maximum extent possible when it is "incompatible with preservation of this unique area," id. at (9) (emphasis added). Simply stated, the Highlands Act does not preclude development in this area; it limits only development that is incompatible with preservation and would therefore cause a decline in the environmental quality of the region.

[Compressor II, 258 N.J. at 331-32.]

Following the Supreme Court's remand, the DEP moved to supplement the record on this appeal with the 2024 HAD decision and its supporting Staff Report. We granted that motion and directed the parties to submit supplemental briefings on the remaining issues and to address whether this matter should be remanded to the DEP or the Office of Administrative Law (OAL) for further fact findings. Appellants, the DEP, and Tennessee Gas then submitted supplemental briefs and appendices. Separately, appellants have filed a notice of appeal from the 2024 HAD and that appeal has been docketed under No. A-1858-23.

10

II.

On remand, appellants make two arguments. First, they contend that the DEP erroneously found Compressor Station 327 to be consistent with the Highlands Act and the regional master plan. Second, they argue that the DEP failed to make an adequate WQM Plan consistency determination. Appellants accordingly request that this court reverse the 2021 HAD, or alternatively, remand for further fact findings by the DEP.

Having reviewed the extensive record related to this matter, and having considered the applicable law, we determine that there is no need for further fact findings. The record establishes that the DEP has carefully considered and set forth the facts supporting its determinations that Compressor Station 327 is an activity consistent with the Highlands Act and the WQM Plan. In addition, we discern nothing arbitrary, capricious, or unreasonable in the DEP's determinations. Therefore, we affirm the 2021 HAD.

A. Whether There is a Need for Further Fact Findings by the DEP.

We begin our analysis by considering the appellants' alternative request for a remand, because logically if there was a need for further administrative fact findings, that would be the first step. We conclude, however, that the DEP has conducted sufficient fact findings for us to review the issue the Supreme

11

Court remanded to us. That issue is whether the DEP erred in determining that Compressor Station 327 was an activity consistent with the goals and purposes of the Highlands Act. Compressor II, 258 N.J. at 331.

In issuing the 2021 HAD, the DEP considered that issue. It reviewed and relied on the analysis provided by the Highlands Council, which had independently considered whether the project was consistent with the Highlands Act.

Following our remand, the DEP reconsidered the issue and again consulted with the Highlands Council. The record on this appeal includes the 2024 HAD and the supporting Staff Report. All parties, including appellants, were given the opportunity to brief the issue of whether this matter needed to be remanded for further fact findings by the DEP. We note that at oral argument, no party argued that the matter should be remanded to the OAL. Indeed, the parties recognized that appellants, as third parties to the HAD application, had no standing to request a contested hearing before an administrative law judge.

Appellants do not have the right to a hearing because the Highlands Act does not grant hearing rights to third-party objectors and appellants do not have a particularized property interest requiring a hearing on constitutional grounds. See N.J.S.A. 13:20-31 (applying the Administrative Procedure Act, N.J.S.A.

52:14B-1 to -31, to the rules, regulations, and procedures set forth in the Highlands Act); N.J.S.A. 52:14B-3.1(b) (explaining that only "[p]ersons who have particularized property interests or who are directly affected by a permitting decision have constitutional and statutory rights and remedies"). See also Musconetcong Watershed Ass'n v. N.J. Dep't of Env't Prot., 476 N.J. Super. 465, 483-85 (App. Div. 2023) (holding that an environmental organization lacked the right to an adjudicatory hearing to challenge the DEP's flood-hazard-area determination for a proposed development because the environmental organization had no particularized property interest related to the determination).

Accordingly, because the record has been sufficiently developed and appellants have no statutory or constitutional rights to an adjudicatory hearing, we reject appellants' alternative request for further administrative fact findings.

> B.   Whether the DEP Erred in Determining that Compressor Station 327 Was an Activity Consistent with the Highlands Act.

"An agency decision 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Compressor II, 258 N.J. at 324 (quoting Mount v. Bd. of Tr., PFRS, 233 N.J. 402, 418 (2018) (quoting Russo v. Bd. of Tr., PERS, 206 N.J. 14, 27

(2011))).  Reviewing courts are not bound by an agency's interpretation of a statute and review matters of law de novo.  Ibid.

The Highlands Act recognizes that the Highlands region is an "essential source of drinking water, providing clean and plentiful drinking water for one-half of the State's population" and that the region "contains other exceptional natural resources such as clean air, contiguous forest lands, wetlands, pristine watersheds, and habitat for fauna and flora, [which] includes many sites of historic significance, and provides abundant recreational opportunities." N.J.S.A. 13:20-2.  The Highlands Act establishes a "preservation area" within the region that has "exceptional natural resource value" subject to stringent water and natural resource protection standards, policies, planning, and regulation.  Ibid.  Properties in the preservation area must adhere to the regional master plan created by the Highlands Council.  N.J.S.A. 13:20-8; N.J.S.A. 13:20-14.  The Highlands Act delegates to the DEP the responsibility for implementing a permitting review program.  N.J.S.A. 13:20-33; N.J.S.A. 13:20-34.

The Highlands Act exempts certain activities from requiring a permit, subject to the DEP's exemption determination as documented by a HAD. N.J.S.A. 13:20-28(a); N.J.A.C. 7:38-2.3(a); N.J.A.C. 7:38-2.4.  If an activity is

14

statutorily exempt, the DEP must still find that that activity is consistent with the goals and purposes of the Highlands Act and the WQM Plan. N.J.S.A. 13:20-28(a)(11); N.J.A.C. 7:38-2.4(a), (e). Additionally, even if a proposed activity is exempt, the applicant must still obtain all other applicable approvals from the DEP, as well as from other State, federal, and local government entities. N.J.A.C. 7:38-2.3(c).

Substantial evidence in the record supports the DEP's finding that Compressor Station 327 is an activity consistent with the goals and purposes of the Highlands Act. When considering a proposed development in the preservation area, the DEP "shall give great consideration and weight" to the Highlands Council's regional master plan. N.J.A.C. 7:38-1.1(g). Nevertheless, the DEP is not bound by the Highlands Council's findings or recommendations. In re N.J. Dep't of Env't Prot. Conditional Highlands Applicability Determination, Program Int. No. 435434, 433 N.J. Super. 223, 238 (App. Div. 2013).

In issuing the 2021 HAD, the DEP considered and agreed with the Highlands Council's finding that Compressor Station 327 was an activity consistent with the goals and purposes of the Highlands Act. The record establishes that Compressor Station 327 was built on property that had

previously been developed and used for industrial and commercial purposes. The property is in Tennessee Gas' pipeline right of way and had previously been used as a quarry. Accordingly, the property was already disturbed and was not a pristine forest area or functioning water source.

The Highlands Council also identified, and the DEP reviewed, Tennessee Gas' efforts to minimize the project's impacts. In that regard, the Highlands Council noted that the property only contained approximately two acres of forest and that the project would only involve the removal of twenty-three trees. Tennessee Gas agreed to plant new trees in an equivalent area. Furthermore, because of the prior quarry operations, the property had long been disconnected from local waterbodies and wildlife habitat areas. The Highlands Council found that the only intrusion within the Highlands open water buffer-and riparian area was 285 feet of the pre-existing gravel access road, which had been in use since the 1960's.

The DEP considered that information, accepted the "positive comments" from the Highlands Council, and identified no countervailing reasons to find that the project was inconsistent with the goals and purposes of the Highlands Act. We discern nothing arbitrary, capricious, or unreasonable in the DEP's determination. In that regard, the record establishes that the DEP considered

16

and ultimately agreed with the Highlands Council's finding that the project was consistent with the goals and purposes of the Highlands Act.

In making our determination, we follow the guidance provided by the Supreme Court. The Court stated, "the Highlands Act does not preclude development in [the preservation] area; it limits only development that is incompatible with preservation and would therefore cause a decline in the environmental quality of the region." Compressor II, 258 N.J. at 332.

We also consider the current state of facts. Compressor Station 327 has been built and has been operating for more than two years. The compressor itself is powered by an electric motor and the auxiliary equipment and building generate only a limited amount of wastewater. There is no showing that the Station's operation has been detrimental to the Highlands area.

Appellants challenge the DEP's 2021 HAD determination contending that the DEP did not appropriately consider the impact of Compressor Station 327 on air and water quality. They also raise a new claim that the project will "enable further sprawl development in the region." The record and the law do not support those arguments.

Concerning air quality, appellants' real argument is that the increased supply of natural gas to customers in New York will have an adverse impact on

overall air quality through an increase in greenhouse gas emissions. Because the alleged increase in greenhouse gas emissions will occur outside the Highlands region and there is no showing that it will directly impact the Highlands region, it does not fall within the ambit of the DEP's HAD review. Indeed, the increased emissions and related issues were raised in front of FERC. FERC addressed the project's impacts on climate change, determined those impacts would be minimal, and issued a certification allowing the project to go forward. That decision was then affirmed by the Court of Appeals for the District of Columbia Circuit. Food & Water, 104 F.4th at 340.

Appellants' new argument concerning sprawl is also unsupported in the record. As already pointed out, the increased delivery of natural gas is to Westchester County, New York. There is no increased delivery of natural gas to the Highlands region and, therefore, no showing that there will be increased development within the Highlands region. Moreover, we note that any new development in the Highlands region would require a separate application and review process. See N.J.S.A. 13:20-33.

C.  Whether The DEP Erred In Finding That The Project Was Consistent With The WQM Plan.

"The Legislature has entrusted to the DEP the enforcement of a complex system of water pollution control." SJC Builders, LLC v. State of N.J. Dep't of

Env't. Prot., 378 N.J. Super. 50, 54 (App. Div. 2005) (citing In re Adoption of N.J.A.C. 7:26E-1.13, 377 N.J. Super. 78, 87 (App. Div. 2005)).  The State has twelve area-wide WQM Plans to address impacts on the State's waters related to developments affecting water use, water generation, and water quality.  N.J.A.C. 7:15-1.2(a)(1); In re Adoption of N.J.A.C. 7:15-5.24(b), 420 N.J. Super. 552, 560 (App. Div. 2011) (explaining that "[i]n accordance with the WQPA . . . twelve areawide water quality management areas in New Jersey have been designated, and areawide plans exist for each one.").

The DEP assesses consistency of the WQM Plan in the Highlands region through its Highlands rules.  N.J.A.C. 7:15-3.2(g), 7:38-9.2(a); see Adoption of N.J.A.C. 7:15-5.24(b), 420 N.J. Super. at 560 (explaining the DEP's process of evaluating WQM Plans).  The rules allow for new subsurface disposal systems, commonly known as septic systems, "where the sanitary wastewater design flow is 2,000 gallons per day or less," N.J.A.C. 7:38-3.4(b), (c), and the project satisfies the DEP's standards for individual subsurface sewage disposal systems, see N.J.A.C. 7:9A-3.13 (outlining the process for obtaining a certificate of compliance for a septic system); N.J.A.C. 7:9A-3.5(a) (explaining that "[a] person shall not construct . . . an individual subsurface sewage disposal system until the administrative authority . . . has issued a permit for such construction").

In support of its HAD determination, Tennessee Gas calculated that it would produce approximately 603 gallons per day of wastewater. Tennessee Gas also calculated that its projected peak water use would be 650 gallons per day. The DEP reviewed and accepted those projected volumes of discharge and water use and found that they would be consistent with the applicable WQM Plan.

The DEP's findings concerning the consistency with the WQM Plan are supported by the record and are not arbitrary, capricious, or unreasonable. Appellants do not dispute Tennessee Gas' estimated water use or wastewater calculations. Instead, they assert that the DEP did not adequately consider the environmental impacts of the "totality" of the project, and that the DEP should have considered additional effects such as "changes in precipitation and stormwater runoff," wastewater, and "impacts to sensitive water bodies." In other words, again, appellants seek to have the DEP consider the project's contribution to climate change as part of its WQM Plan consistency determination. Those broader considerations, however, are beyond the scope of a WQM Plan consistency determination. As previously explained, where a septic system generates less than 2,000 gallons per day, the WQM Plan determination is guided by N.J.A.C. 7:38-3.4(b). See N.J.A.C. 7:9A-1.2. A

20

septic system is consistent with the WQM Plan, so long as "the . . . wastewater design flow is 2,000 gallons per day or less," N.J.A.C. 7:38-3.4(b), and it also satisfies the DEP's standards, see N.J.A.C. 7:9A.  Findings regarding the impact on precipitation, stormwater, and runoff are not required under the rules.  See N.J.A.C. 7:9A-1.6 (outlining "General Prohibitions" regarding septic systems); see also N.J.A.C. 7:9A-3.5(c) (listing required submissions in an application to construct a septic system).  Moreover, appellants cite no authority to explain how applicants or the DEP could determine a proposed project's climate change impacts on water quality.

## III.

Appellants have a legitimate right to review, consider, comment on and, where necessary, challenge a DEP HAD determination.  The record establishes that appellants have been given full and fair consideration of their concerns.  We note that many of their concerns go beyond considerations governed by the Highlands Act and instead seek to address much broader concerns regarding climate change.  No matter how one views the broader issues related to climate change, they are not within the ambit of a DEP HAD determination under the Highlands Act.

21

IV.

Having concluded that the 2021 HAD is supported by substantial credible evidence in the record and is not arbitrary, capricious, or unreasonable, we affirm that HAD. That affirmation moots any appeal that appellants have in challenging the 2024 HAD. Accordingly, we are also issuing a separate order sua sponte dismissing appellants' appeal under Docket No. A-1858-23.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3616-20